*In re* Raúl Pedraza González, querellado.

*Número:* CP-91-93          *Resuelto:* 23 de noviembre de 1992

*Jorge E. Pérez Díaz, Procurador General*, e *Iván F. Fuster Lebrón, Procurador General Auxiliar*, abogados del querellante; *Jorge R. Díaz Aquino*, abogado del querellado; *Abner Limardo Sánchez*, Comisionado Especial.

PER CURIAM:

## I

El Procurador General formuló la siguiente querella disciplinaria contra el Lcdo. Raúl Pedraza González:

### Cargo NÚMERO I

El Lcdo. Raúl Pedraza González en el desempeño de su profesión como abogado notario violó la fe pública notarial, al dar fe en la escritura número 1 de 18 de enero de 1983 sobre compraventa, que la Sra. Josefa Buil Vélez como parte otorgante en carácter de vendedora, había firmado dicha escritura en su presencia, constándole al Lcdo. Raúl Pedraza González que dicho hecho era falso, y que dicha firma no era la legítima firma de la Sra. Josefa Buil Vélez y que ésta tampoco firmó dicha escritura en su presencia, sino que el nombre de Josefa Buil Vélez, fue también escrito por el Sr. Jesús Buil Vélez, parte otorgante compradora en la referida escritura, falsificándose de esta forma la referida firma.

### Cargo NÚMERO II

El Lcdo. Raúl Pedraza González, en el desempeño de su profesión de abogado-notario, violó el Canon 38 del Código de Etica Profesional, al incurrir en conducta altamente ilegal, impropia y censurable. Dicha conducta consistió en autorizar un contrato nulo de compraventa, mediante la escritura núm. 1 de 18 de enero de 1983, por carecer dicho contrato del elemento del consentimiento de la Sra. Josefa Buil Vélez, parte vendedora, ya que fue el Sr. Jesús Buil Vélez, parte compradora en dicha escritura, quien en presencia del querellado, procedió a escribir el nombre de Josefa Buil Vélez, en la referida escritura. Este hecho como abogado-notario autorizante, le constaba o debió cons-

tarle, [a]l Lcdo. Raúl Pedraza González. La referida actuación del Lcdo. Pedraza González constituye una desviación de las normas de conducta profesional que debe observar todo abogado, según establecido en el Canon 38, párrafo I del Código de Etica Profesional. Querella, pág. 2.

El querellado contestó y negó los hechos. Como defensas afirmativas adujo duplicidad de los cargos; no haber sido parte ni testigo citado e ignorar en detalle lo que se ventilaba en el Pleito Civil Núm. 87-6336 (1003) ante el Tribunal Superior, Sala de San Juan; y que del hecho de que la firma de Josefa Buil Vélez fuese simulada no podía concluirse que él incurriese en conducta ilegal o la consintiera.

Designamos al ex Juez Superior Abner Limardo Sánchez Comisionado Especial, con la misión de escuchar, recibir y aquilatar la prueba. Previa vista evidenciaria, dicho Comisionado Especial rindió su informe y nos formuló las conclusiones de hecho siguientes:

(1) Raúl Pedraza González (*en adelante, el Querellado*) ha ejercido esa profesión desde 1970 hasta el presente, con excepci[ó]n del período de 18 meses, a partir del 16 de diciembre de 1986, en que fue suspendido del ejercicio del notariado por el Tribunal Supremo de Puerto Rico en el procedimiento, *In re*, Raúl Pedraza González, 118 D.P.R. 87. Fue reinstalado por dicho tribunal el 16 de junio de 1988.

(2) Jesús Buil Vélez requirió los servicios notariales del Querellado para que otorgase la escritura pública de compraventa mediante la cual compraría un inmueble de su tía, Josefa Buil Vélez (*en adelante, Doña Josefa*). El Querellado conocía a Jesús Buil Vélez y a la esposa de éste, Migdalia Ocasio Durán, desde 1970 como vecinos de la Urbanización Reparto Metropolitano de Río Piedras donde él residía también. Le representaban ser personas honestas.

El Querellado se trasladó para el otorgamiento de la escritura expresada a casa de Doña Josefa en la Urbanización Villa Neváres de Río Piedras, que era también la residencia de Jesús Buil Vélez y su esposa. La Escritura núm. 1 del 18 de enero de 1983 del protocolo de instrumentos públicos del Querellado (Exhibit 1 del Procurador, *en adelante denominada también como la Escritura núm. 1*) consigna el otorgamiento de la misma. Informa esta escritura pública que Doña Josefa vendió

el inmueble de su propiedad (solar urbano de 587.71 metros cuadrados, número 12 del bloque X del Barrio Monacillos de Río Piedras y casa en el mismo, inscrito como finca núm. 1351 al folio 52, vuelto del Tomo 98 de la Sec. 5ta. del Registro de la Propiedad de San Juan.) a los esposos Jesús Buil Vélez y Migdalia Ocasio Durán, por el precio de $70,000.00 del cual esos compradores retuvieron la suma de $43,469.32 para el pago en su día de la hipoteca "que grava dicha propiedad" y el balance de $36,530.68 manifestó la parte vendedora "haberlo recibido de manos de la parte compradora con anterioridad a (ese) acto en moneda legal de los Estados Unidos." (Cláusula Dos de la Escritura núm. 1). (Excepto esta expresión en la Cláusula Dos de dicha escritura pública, en la vista ante el Comisonado Especial no se presentó prueba alguna para establecer que Doña Josefa recibiese ese balance o cualquier otra suma resultante de esta transacción.) Al folio cuarto de la Escritura núm. 1 expresa el Querellado al efecto que las partes, ante él, después que se las leyera en alta voz y encontrándola ellos conforme, la firmaron "en un sólo acto."

El Querellado acreditó la fidelidad de todos los extremos anteriormente expuestos de esa escritura mediante una expresión general de fe, incluida en su párrafo final, que abarca su "conocimiento personal de los otorgantes, de sus circunstancias personales y vecindad, as[í] como de todo lo demás consignado en (ese) instrumento público".

(3) (En el momento que el Comisionado Especial formula sus conclusiones, advierte que en el supuesto que dicho precio fuese la suma de $70,000.00 expresada, el remanente del mismo, después de deducir dicho balance hipotecario de $43,469.32, debió ser $26,530.68 y no la suma de $36,530.68 que se indica en esa escritura como recibido por la vendedora. De haber sido esta última la cantidad recibida por la vendedora, el precio de la venta debió en tal caso ser $80,000.00. La prueba ante el Comisionado Especial no aclaró este defecto.)

(4) *No es correcto que Doña Jose[f]a firmase la Escritura núm. 1 ante el Querellado. La escritura o manuscrito que aparece con su nombre como su firma, después del párrafo final de su texto, fue hecha por otra persona que la imitó.* As[í] lo concluyen el perito calígrafo del Procurador y el del propio Querellado. Aunque sus testimonios discrepan en cuanto a la persona que efectuó esa imitación: el calígrafo presentado por el Procurador sostiene que la firma de Doña Josefa fue efectuada por el compareciente como comprador en la Escritura, Jesús Buil Vélez. El calígrafo presentado por el Querellado opinó que debido a la falta de suficientes y adecuadas muestras,

no es posible conclu[i]r que fuese Jesús Buil Vélez quien imitara la firma de Doña Josefa. La escritura o manuscrito que se informa como la firma de Doña Josefa en la Escritura núm. 1 fue comparada por ambos calígrafos con la firma, incuestionablemente suya, en la venta que hiciera de ciertos condominios a Juan Acosta B[á]ez mediante la Escritura Pública número 6 otorgada en Yauco, Puerto Rico[, ] el 3 de marzo de 1978 ante el Notario Iván Daniel Gil Sánchez. Esa comparación demostró, patentemente, el carácter apócrifo de la firma de Doña Josefa en la Escritura número 1. Al carecer la prueba presentada en la vista de todo indicio que sugiera que alguna persona tenía autorización o facultad de Doña Josefa para firmar en su nombre o representación dicha escritura pública, *concluimos, como cuestión de hecho, que en la Escritura núm. 1 se falsificó su firma.* Estimamos correcta la apreciación del Sr. Pedro A. Figueroa, perito calígrafo del Querellado, de la imposibilidad de arribar a conclusiones sobre la identidad de la persona que imitó la firma de Doña Josefa, incluyendo descartar que lo fuera Jesús Buil Vélez de quien la prueba demostró que no se tenía otra firma suya con la cual comparar. *No obstante, por todo lo anterior, concluimos también que el Querellado, al indicar al folio cuarto de la Escritura número 1 al efecto que Doña Josefa firmó ante él y en un solo acto ese instrumento público, consignó un hecho falso, constándole su falsedad; asimismo, al dar fe de esto en el último párrafo de esa escritura lo hizo de un hecho falso, a sabiendas que lo era.*

La expresión del Querellado al párrafo Dos, folio tercero de la Escritura número 1, de haber manifestado la vendedora el recibo del balance del precio de venta, después de descontada la suma de la deuda hipotecaria del inmueble, *representa también la consignación de un hecho falso* ya que no fue cierto que esto ocurriese. Lo acontecido fue que el Querellado meramente di[o] "por bueno lo que le dijeron Jesús (refiriéndose a Jesús Buil Vélez) y su esposa de que le habían pagado a Doña Josefa." As[í] lo admitió al ser interrogado sobre este extremo en la vista ante el Comisionado Especial. Igualmente, al haber dado fe de esto al párrafo final de la Escritura núm. 1, lo hizo de un hecho falso, a sabiendas que lo era.

(5) La Escritura núm. 1 no aparece inscrita en el Registro de la Propiedad. (Certificación de dicho registro consistente del Exhibit 4 del Querellado) (En la vista ante el Comisionado Especial no se presentó prueba alguna indicativa que dicha escritura se presentara en el Registro de la Propiedad para su inscripción.

(6) La propiedad inmueble del solar número 12 del bloque X

de la Urbanización Villa Nevares referida en la Escritura número 1 como objeto de la compraventa de la misma, fue adquirida mediante compra por Doña Josefa, estando soltera, a Gladys Juarbe Pérez por el precio de $65,000.00 a través de la Escritura Pública número 5 del 29 de enero de 1979 otorgada ante el Notario Alejandro Arana Aramburu Maldonado; por esta compra la indicada propiedad fue inscrita en el Registro de la Propiedad, Sección 5ta. de San Juan en la inscripción 5ta. del 8 de febrero de 1979. (Exhibit 4 del Querellado) Doña Josefa falleció el 11 de mayo de 1984 a la edad de 89 años. Había otorgado testamento abierto por la Escritura Pública número 67 del 21 de abril de 1962 en Yauco, Puerto Rico ante el Notario Carlos M. Franco Soto en el cual instituyó como únicos y universales herederos a sus hermanos Sofía y Camilo Buil Vélez. En virtud de dicho testamento la referida propiedad fue inscrita en el Registro de la Propiedad por igual a nombre de Sofía y Camilo Buil Vélez el 26 de mayo de 1989. (Exhibit 4 del Querellado)

Sofía Buil Vélez falleció el 16 de enero de 1986; su hermano Camilo Buil Vélez le había premuerto. A su muerte Sofía dejó testamento otorgado en Yauco, el 27 de abril de 1979 ante el Notario Luis Negrón López en el cual instituyó herederos a su hermana Doña Josefa, que le premurió, y a Fernando Martínez Pacheco, Amalia Comellas Rodríguez, Anabel Martínez Comellas, Wanda Martínez Comellas y Maribel Martínez Comellas, a favor de quienes se inscribió, por ello, la propiedad inmueble del solar número 12 del bloque X de Villa Nevares referida, en la inscripción 7ma. del Registro de la Propiedad del 8 de septiembre de 1989. (Exhibit 4 Querellado)

(7) En pleito radicado con posterioridad a la muerte de Doña Josefa ante la Sala de Ponce del Tribunal Superior, caso Civil núm. CS-86-1333, Jesús Buil Vélez y otros parientes radicaron demanda contra los herederos mencionados Fernando Martínez Pacheco, Amalia Comellas Rodríguez y Anabel, Wanda, y Maribel Martínez Comellas en el que solicitaron la nulidad del testamento otorgado por Sofía Buil Vélez. De conformidad con la información que surge de ese proceso judicial, Jesús Buil Vélez era el tutor de la causante Sofía Buil Vélez en virtud del caso Civil núm. RF-84-1323(701) del Tribunal Superior de San Juan; actuando como tal retiró y se apropió ilegalmente la suma de $177,000.00 de una cuenta de cheques del First Federal Savings Bank perteneciente a dicha pupila que tenía bajo su posesión, desapareciendo sin conocerse su paradero.

El 9 de enero de 1987 los demandados en el pleito CS-86-1333 de la Sala Superior de Ponce, radicaron contra Jesús Buil

Vélez y su esposa Migdalia Ocasio Durán en el caso Civil núm. 87-6336(1003) del Tribunal Superior de San Juan una demanda e[n] la cual reclamaron la nulidad de la compraventa otorgada mediante la Escritura número 1. Esta solicitud se fundamentó en que en la misma fue "influenciada y viciada (la) voluntad" de Doña Josefa; que ella "no tenía la capacidad requerida en derecho" y además que dicha transacción fue hecha a título gratuito con el propósito de defraudar a los herederos demandantes. Se alegó en la demanda que a pesar que en esa escritura pública se consignó que la vendedora manifestó haber recibido el precio con anterioridad al otorgamiento, ella "nunca recibió el precio ni en todo ni en parte". (párrafos 4 y 10 de esa demanda - Exhibit 5 del Procurador). Jesús Buil Vélez no compareció a ese proceso y le fue anotada la rebeldía; Migdalia Ocasio Durán, quien compareció representada por el Lcdo. José F. Franco Rivera, negó en su Contestación las alegaciones expresadas de la demanda.

Con posterioridad a la radicación de la demanda en el caso civil núm. 87-6336(1003), uno de los demandantes (Fernando Martínez Pacheco) alertó al abogado que les representó en ese proceso, Lcdo. José Aulet Concepción, de la posibilidad que la firma de Doña Josefa en la escritura pública impugnada fuese falsificada. El Lcdo. Aulet investigó este extremo a través del calígrafo, Sr. Onofre Jusino, quien rindió informe del resultado de sus hallazgos el 17 de enero de 1989. A pesar que el Lcdo. Aulet no efectuó una enmienda a las alegaciones de la demanda para incluir este nuevo ángulo como fundamento de la nulidad de la compraventa interesada, el Lcdo. Franco Rivera estaba consciente del propósito de los demandantes de llevarlo a la consideración del Tribunal en la fecha del juicio, sin evidente objeción de su parte. El anunció al Lcdo. Aulet que utilizaría al Querellado como testigo en el juicio. Migdalia Ocasio Durán no testificaría en el mismo. La evidencia no demostró una fundada explicación para esto último. Según el Lcdo. Franco Rivera, ella se encontraba "en un estado de nerviosismo muy grande" que le impedía prestar testimonio en dicha vista. De otro lado, la versión de ella al Lcdo. Franco Rivera fue al efecto de manifestarle haber firmado la Escritura núm. 1 el 18 de enero de 1983; pero no podía asegurarle que su firma expresada ocurriese en el mismo momento que las firmas de Jesús Buil Vélez y Doña Josefa. En definitiva, el que dicha demandada presentara prueba en el caso iba a depender enteramente de que el Querellado testificara. Aunque la prueba no estableció que el Querellado tuviese conocimiento de esta situación, el Lcdo. Franco Rivera le comunicó de su interés en que él prestara testimonio

en el juicio a ventilarse; asimismo, le puso en conocimiento de la impugnación que se pretendía de la compraventa por razón de la falsedad de la firma de Doña Josefa en la Escritura núm. 1. Le expresó: "Ese es tu caso; tienes que declarar; él (refiriéndose al Lcdo. J. Aulet) va a venir con un calígrafo y yo no tengo calígrafo, tienes que declarar." El plan del Lcdo. Franco Rivera era que, al ser confrontado el Tribunal con la prueba de los demandantes, de un lado y con el testimonio del Querellado afirmando su fe notarial en el documento otorgado, de otro lado, mantendría dicha fe notarial. El Querellado le mostró su disposición de comparecer a declarar en la vista del juicio.

Ninguna de las partes gestionó a través del Tribunal la citación del Querellado para que compareciera al juicio a ventilarse. Tampoco se demostró que el Tribunal requiriese su comparecencia. El Lcdo. Franco Rivera le llamó por teléfono el 18 de enero de 1989 a su oficina para recordarle que el juicio se ventilaría al día siguiente, requiriéndole su asistencia al mismo. El Querellado le respondió de su disposición a comparecer, aunque le expuso que al día siguiente estaría ocupado en la ventilación del juicio contra su representado, Sr. José del Rosario, denunciado en casos de Alteración a la Paz y Agresión Agravada ante el Juez Hon. Rodríguez Arena de la Sala 605 del Centro Judicial de San Juan.

(8) La prueba de la parte demandante en el juicio del caso civil 87-6336(1003) fue presentada al Tribunal en las horas de la mañana del 19 de enero de 1989. Se señaló la continuación del juicio para las dos de la tarde de ese día para escuchar el testimonio del Querellado, única prueba anunciada por el Lcdo. Franco Rivera por la demandada Migdalia Ocasio Durán. (El co-demandado Jesús Buil Vélez no compareció a esa vista) El Tribunal esperó hasta las 2:50 P.M.y al no llegar el Querellado, dispuso dar "por sometido el caso por la prueba presentada" para resolver "oportunamente." (pág. 3 de la minuta de la vista del 19 de enero de 1989 en ese caso, Exhibit 6 del Procurador) El Querellado compareció a la Sala 1003 muy poco después de las 3:00 P.M., una vez se desocupó en el compromiso profesional que atendía en la Sala 605. Se vio obligado a permanecer hasta la terminación del juicio ventilado en sus méritos contra su representado, quien salió culpable en ambas denuncias. (Exhibit 3 del Querellado) A esa hora los comparecientes se habían retirado y la Sala 1003 se encontraba cerrada; el Alguacil le informó de la conclusión del caso, retirándose el Querellado sin realizar ninguna otra gestión en relación al mismo. (Énfasis suplido y en el original.) Resolución de 7 de octubre de 1991, págs. 4–11.

## II

■ Reafirmamos la necesidad de que los notarios cumplan rigurosa y cabalmente con las normas sobre identidad del compareciente y la fe de conocimiento, atributos inseparables de la fe notarial. *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992); *In re Landing; y Aulet*, 107 D.P.R. 103 (1978). Véanse, además: *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 837 (1979); *In re Olmo Olmo*, 113 D.P.R. 441, 454–455 (1982); *In re Pérez Rodríguez*, 115 D.P.R. 547 (1984); *In re Fournier*, 114 D.P.R. 255 (1983); *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986); *In re Aponte Arché*, 117 D.P.R. 837 (1986); *In re Ríos Rivera*, 119 D.P.R. 586 (1987).

■ En esa gestión, todo notario está obligado a cumplir con la ley y los cánones de ética, bajo apercibimiento de la acción disciplinaria correspondiente. *In re Cruz Tollinche*, 114 D.P.R. 205 (1983).

■ Según expuesto, el abogado Pedraza González permitió que ante sí, y con su autorización como notario, se cometiera un acto claro de *falsificación* en cuanto a la identidad de una supuesta parte compareciente al acto de firma y otorgamiento de una escritura. La prueba de peritos calígrafos así lo demuestra. De ese modo, defraudó a las partes, a los miembros de la sucesión de la supuesta otorgante y, en particular, a la fe pública que depositó en él la sociedad mediante la autorización que le conferimos de ejercer la notaría.

■ En *Pueblo v. Flores Betancourt*, 124 D.P.R. 867, 879 (1989), indicamos que "[c]ualquier persona prudente conoce las consecuencias probables de la creación, a sabiendas, de un documento falso capaz de transmitir derechos de propiedad. Todavía más consciente debió ser el apelante que por su profesión es un conocedor del Derecho". (Énfasis suprimido y escolio omitido.)

Frente a estos hechos, *procede decretar la suspensión indefinida del querellado Pedraza González como abogado y notario.*

*Se dictará sentencia de conformidad.*([1])

---

([1]) El querellado estuvo suspendido antes por omitir rendir sus índices notariales. *In re Pedraza González*, 118 D.P.R. 87 (1986).