RENÉ CINTRÓN RAMOS y su esposa DIGNA ESTHER CASTRO RIVERA, recurrentes, *v.* LCDA. MARGARITA M. BORRÁS MARÍN, REGISTRADORA, REGISTRO DE LA PROPIEDAD DE PUERTO RICO, SECCIÓN DE FAJARDO, recurrida.

*Número:* RG-96-5 *Resuelto:* 13 de noviembre de 1997

*Sergio Rádinson Caraballo*, abogado de los recurrentes; la Registradora de la Propiedad, recurrida, compareció por escrito.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

Tenemos ante nuestra consideración un recurso gubernativo que nos permite aclarar cuáles documentos de identidad pueden ser utilizados como medios supletorios de identificación, al amparo del Art. 17(c) de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035(c),[1] en defecto del

---

[1] Ley Núm. 99 de 27 de junio de 1956, según enmendada por la Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*).

conocimiento personal de los otorgantes por parte del notario.

## I

El 18 de febrero de 1994 el notario Francisco Rádinson Pérez autorizó la Escritura Núm. 20 de Compraventa, mediante la cual los recurrentes, René Cintrón Ramos y su esposa Digna Esther Castro Rivera, también conocida como Digma Esthel Castro y como Diana Burgos, adquirieron de los esposos Gilberto Lebrón Morales y Paula Velázquez Rivera una propiedad localizada en la comunidad rural Aguas Claras del Barrio Chupacallos del Municipio de Ceiba. Ese mismo día, el matrimonio Cintrón-Castro otorgó ante el notario Rádinson Pérez la Escritura Núm. 21 sobre Hipoteca en Garantía de Pagaré al Portador a favor del matrimonio Lebrón-Velázquez. Ambas escrituras fueron presentadas para su inscripción el 23 de febrero de 1994 a los Asientos Núms. 525 y 526, respectivamente, del Libro Núm. 65 del Diario de Presentaciones de la Sección de Fajardo del Registro de la Propiedad.

En el otorgamiento de la Escritura Núm. 20, el notario autorizante dio fe del conocimiento personal de los comparecientes Gilberto Lebrón Morales y Paula Velázquez Rivera. Sin embargo, por no conocer personalmente a los comparecientes René Cintrón Ramos y Digna Esther Castro Rivera, el notario Rádinson Pérez identificó a Cintrón Ramos mediante su tarjeta de identificación como empleado de la sede de las Naciones Unidas[2] en el estado de Nueva York y a su esposa mediante su tarjeta de identifi-

---

[2] Las Naciones Unidas es una organización internacional a la que pertenecen gran parte de las naciones del mundo. Ésta fue creada en 1945 con el objetivo de mantener la paz y seguridad internacional; desarrollar relaciones de amistad entre las naciones, fundamentadas en el respeto al principio de los derechos de igual protección y autodeterminación de las personas, y obtener cooperación internacional en la solución de problemas internacionales de carácter económico, social, cultural y humanitario. M.N. Shaw, *International Law*, 2da ed., Cambridge, Grotivs Pubs., 1986, págs. 592–593.

cación como empleada del Citibank, N.A. En cuanto a la Escritura Núm. 21, el notario autorizante identificó al matrimonio Cintrón-Castro mediante las mismas tarjetas de identificación mencionadas anteriormente, de las cuales dio una descripción y anotó su número.(³)

Posteriormente y ante el mismo notario autorizante, el matrimonio Cintrón-Castro otorgó la Escritura Núm. 70 sobre Cancelación de Pagaré Hipotecario. Ésta fue presentada para inscripción al Asiento Núm. 198 del Libro Núm. 71 del Diario de Presentaciones de la Sección de Fajardo del Registro de la Propiedad. En la escritura, el notario Rádinson Pérez sí dio fe del conocimiento personal de los otorgantes.

El 14 de agosto de 1996 la Registradora del Registro de la Propiedad de Fajardo, Lcda. Margarita M. Borrás Marín, notificó al notario Rádinson Pérez que la escritura de compraventa (Escritura Núm. 20) adolecía de una falta que impedía su registro. La Registradora adujo que " '[l]os medios supletorios utilizados para identificar a los comparecientes no son los contemplados por la ley Notarial [sic] (artículo 17(c))' ". Alegato de la parte recurrida, pág. 2. Añadió que las otras dos (2) escrituras presentadas tampoco podían ser registradas por depender de la Escritura Núm. 20 para su inscripción.

---

(³) En la Escritura Núm. 20 se hizo constar lo siguiente:
"DOY FE
"Del conocimiento personal de los comparecientes don Gilberto Lebrón Morales y su esposa doña Paula Velázquez Rivera, no así de los comparecientes don René Cintrón Ramos y doña Digna Esther Castro Rivera, también conocida como Digma Esthel Castro y como Diana Burgos y por las manifestaciones de estos últimos, que juzgo ciertas, DOY FE de su edad, estado civil, ocupación, vecindad y número de seguro social y *valiéndome de·lo dispuesto en el Artículo 17 de la Ley Notarial utilizando como medio supletorio de identidad la tarjeta de identificación de empleado de las Naciones Unidas del Estado de New York, número 531380 de don René Cintrón Ramos y la tarjeta de identificación de empleada del Citibank, N.A., número 0313601, de doña Digna Esther Castro Rivera, también conocida como Digna Esthel Castro y como Diana Burgos.*" (Énfasis suplido.) Apéndice, *exhibit* 1, pág. 2.
Se utilizó un lenguaje similar en la Escritura Núm. 21, otorgada por el matrimonio Cintrón-Castro, en cuanto a los medios supletorios de identificación utilizados por el notario Rádinson Pérez. Véase Anejo B de la Moción Informativa y Acompañando Documentos, presentada por la Registradora el 18 de octubre de 1996.

Inconformes con la calificación, los recurrentes presentaron el escrito de recalificación en el que plantearon que cuando el Art. 17 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2035, dispone sobre el medio supletorio a lo que se refiere es al medio que utilizará el notario para identificar la persona. A tales efectos, adujeron que según la interpretación que de ese artículo hace el Reglamento Notarial de Puerto Rico de 1ro de agosto de 1995 (4 L.P.R.A. Ap. XXIV), lo importante es que el notario identifique a los otorgantes a través de *cualquier* método supletorio que provea y/o facilite esa identificación. Por lo tanto, las tarjetas de identificación utilizadas por el notario autorizante para identificar a los otorgantes son una *prueba fehaciente de la identidad de ellos*, según requiere la Ley Notarial de Puerto Rico.

Por otro lado, los recurrentes alegaron que interpretar restrictivamente el Art. 17 de la Ley Notarial de Puerto Rico, *supra*, "es darle una interpretación a dicho artículo que no tiene y que vulnera el derecho de todo otorgante que no tenga alguno de los métodos supletorios fijados en el artículo 17 de la Ley Notarial, a contratar al amparo de la referida ley".[4]

Por su parte, la Registradora de la Propiedad denegó la recalificación de las mencionadas Escrituras Núms. 20 y 21 por la misma razón que adujo en su escrito inicial y la de la Núm. 70 por ésta depender de las anteriores en cuanto al historial o tracto sucesivo de la propiedad en cuestión.

Por no estar de acuerdo con la denegatoria de la Registradora, el notario Rádinson Pérez recurre ante nos en representación del matrimonio Cintrón-Castro mediante un recurso gubernativo.

En su recurso los recurrentes plantean la objeción siguiente a la calificación de la Registradora Borrás Marín:

---

[4] Recurso Gubernativo de la parte recurrente, pág. 7.

... [L]a Honorable Registradora de la Propiedad, Sección de Fajardo, *incidió* al interpretar en forma restrictiva y limitada y más que restrictiva y limitada, inoperante, el artículo 17 de la Ley Notarial aprobada el día 2 de julio de 1987 y su Reglamento interpretativo aprobado el día 30 de junio de 1995, al denegar los documentos relacionados porque los medios supletorios utilizados para identificar a los comparecientes no son los contemplados por el citado artículo. (Énfasis en el original.) Recurso Gubernativo de la parte recurrente, págs. 4–5.

Presentado el alegato correspondiente por la parte recurrida, procedemos a resolver.

## II

El Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2002, dispone, en lo pertinente, que "[e]l notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen". Por tal razón, la autoridad y validez del instrumento público que otorgan los comparecientes va a depender de que el notario autorizante acate fiel e inteligentemente los requisitos y formalidades que le impone la Ley Notarial de Puerto Rico. *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 834 (1979). Cuando el notario actúa como tal, ejerce una "previa calificación" que requiere todo su esfuerzo por alcanzar la mayor claridad, exactitud y certeza en los documentos que presenta ante el Registrador. *Empire Life Ins. Co. v. Registrador*, 105 D.P.R. 136, 139 (1976).

En el derecho notarial puertorriqueño, la escritura pública es la fuente primaria que nutre el principio de legalidad que gobierna nuestro sistema inmobiliario registral. Cuando el notario finalmente cumple con su obligación notarial de autorizar la escritura pública es que comienza la función calificadora del Registrador. *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76 (1992).

■ Los registradores de la propiedad tienen dentro de sus funciones la responsabilidad de calificar la legalidad de los documentos notariales, entre otros, en cuya virtud se solicite un asiento. *Chase Manhattan Bank, N.A. v. Registrador*, 137 D.P.R. 451 (1994). Dicha facultad calificadora viene impuesta por el principio hipotecario de legalidad, el cual requiere que los títulos que pretendan ser inscritos en el Registro de la Propiedad sean sometidos a un examen previo, con el fin de que en los libros hipotecarios sólo tengan acceso los títulos válidos y perfectos. Íd. Sin embargo, dicha calificación no se extiende a la declaración de la existencia o inexistencia de un derecho dudoso o debatido entre partes contendientes. Más bien se circunscribe a determinar *si un título es o no inscribible*, a base de las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en los documentos en cuestión. Íd.

■ En cuanto a este último aspecto de la calificación registral, la labor del Registrador se circunscribe a comprobar si el contenido de la escritura pública es válido o nulo y a calificar la trascendencia real del contenido del título en cuestión. Para ello, el Registrador sólo podrá tomar en cuenta lo que surja de los documentos presentados, los asientos registrales vigentes y las leyes. Véase *Chase Manhattan Bank, N.A. v. Registrador*, supra. En otras palabras, lo que le está vedado al Registrador, al momento de calificar un documento notarial, es actuar como juez. Es una autoridad reservada a los tribunales decretar *erga omnes* la validez de los actos o contratos contenidos en los documentos que hayan sido sometidos a la calificación del Registrador. *Cabrer v. Registrador*, 113 D.P.R. 424, 432 (1982).

■ A manera de resumen, podemos concluir que la función calificadora del Registrador incluye el examen de las formas extrínsecas de los documentos notariales presentados para su inscripción. A esos efectos, le corresponde

determinar si el documento presentado cumple con las formalidades que exige nuestra Ley Notarial de Puerto Rico, tales como: la capacidad de los otorgantes, la fe de conocimiento o identidad de los otorgantes, la rúbrica y la firma del notario, los otorgantes y los testigos (de haberlos), entre otros. *Ramírez Lebrón v. Registrador*, supra, págs. 82–83.

## III

La aprobación de la Ley Notarial de Puerto Rico no implica una alteración general del notariado. Principios como los antes mencionados siguen vigentes aún después de la aprobación de la actual Ley Notarial de Puerto Rico. En efecto, esta nueva legislación recoge, en varias de sus disposiciones, asuntos ya considerados y resueltos en la jurisprudencia notarial de este Tribunal que antecede a la aprobación del estatuto notarial vigente.[5] Como bien señala Pedro Malavet Vega en el *Manual de Derecho Notarial puertorriqueño*, 2da ed., Santo Domingo, Ed. Corripio, 1994, págs. 11–12,

> ... esta nueva legislación no implica en forma alguna una sacudida general de la práctica notarial. Las modificaciones contenidas en la ley son, en su mayoría, aspectos ya tratados y resueltos por la jurisprudencia reciente de nuestro Tribunal Supremo ... *Las formalidades y solemnidades del instrumento público no cambian vertiginosamente, es de lo poco que se mantiene razonablemente inmune al shock del futuro.* ... (Énfasis suplido.)

Un ejemplo de lo antes expresado es el alcance, el significado y la importancia del requisito de la *fe del conocimiento* en la práctica notarial puertorriqueña, aún después de la aprobación de esta nueva legislación. Un examen minucioso de la jurisprudencia de este Tribunal, antes y des-

---

[5] Véanse: *In re Cancio Sifre*, 106 D.P.R. 386 (1977); *Sucn. Santos v. Registrador*, 108 D.P.R. 831 (1979); *In re Olmo Olmo*, 113 D.P.R. 441 (1982); *In re Pérez Rodríguez*, 115 D.P.R. 547 (1984), entre otros.

pués de la aprobación de la nueva Ley Notarial de Puerto Rico, nos lleva indudablemente a esta conclusión.

Antes de la aprobación de la Ley Notarial de Puerto Rico vigente, expresamos lo siguiente:

> La transformación de nuestra economía, el incremento poblacional concentrado en grandes ciudades sin duda hacen más laboriosa para el notario la identificación de otorgantes, pero no justifican degradar la fe pública y el valor de legitimación que tan pesadamente descansan en esa dación de fe de conocimiento de las personas y de haberse el notario asegurado de su identidad. ... La garantía que para el tráfico jurídico y legitimación de actos representa el citado requisito del Art. 16 de la Ley bien vale que el notario sea acucioso y esforzado en revelar la identidad de quienes ante él contratan o actúan. *In re Cancio Sifre*, 106 D.P.R. 386, 394–395 (1977).

Así mismo, señalamos que:

> Es unánime el criterio de que los *documentos de identidad como medio supletorio —relacionándose en el instrumento— comprenden carnet o documentos de identidad —con fotografías o firmas— expedidos por las autoridades públicas y cuyo objeto sea identificar para fines legítimos a las personas.* En el Puerto Rico contemporáneo, la licencia de conducir, la tarjeta de identificación electoral, el pasaporte —documentos que contienen datos sobre las características físicas de la persona (edad, estatura, ojos, otras señas) con una fotografía— constituyen medios preferentes y aceptables que, *unidos al prudente trabajo investigativo del notario, previo y coetáneo al otorgamiento, permiten viabilizar la dación de fe notarial bajo un estado de convicción anímica razonable.*[6] (Énfasis suplido.)

■ Después de la aprobación de la nueva legislación, reiteramos en varios casos la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosameante el mandato de la Ley Notarial de Puerto Rico sobre la comparecencia y el conocimiento de los otorgantes. *In re Vargas Hernández*, 135 D.P.R. 603 (1994); *In re Rodríguez Gerena I*, 132 D.P.R. 693 (1993); *In re Pedraza*

---

[6] *In re Olmo Olmo*, supra, pág. 462.

*González*, 132 D.P.R. 9 (1992); *In re Cruz Cruz*, 126 D.P.R. 448, 454 (1990). En este último caso indicamos que:

> Es evidente, pues, que la Ley Notarial derogada así como la actual considera un asunto medular la comparecencia personal y el conocimiento de los firmantes. Su inobservancia siempre ha constituido una falta seria sujeta a medidas disciplinarias. *In re Cruz Cruz*, supra, pág. 454.

Así también señalamos en *Ramírez Lebrón v. Registrador*, supra, pág. 86, que:

> ... [L]o importante de la fe de conocimiento es "asegurar que el compareciente es quien dice ser".

Por último, en *In re Rodríguez Gerena I*, supra, pág. 697, expresamos, en lo pertinente, que:

> "Sin la fe del conocimiento, sobran los notarios. Por ende, su inobservancia es una falta grave sujeta a estrictas medidas disciplinarias. *In re Echevarría González*, 116 D.P.R. 423, 424 (1985); *In re Félix*, 104 D.P.R. 379 (1975)."

De lo anteriormente expuesto, surge con total claridad que tanto la Ley Notarial de Puerto Rico de 1957, derogada, 4 L.P.R.A. ant. sec. 1001 *et seq.*, como la nueva ley consideran como asunto cardinal el principio de la fe de conocimiento de los otorgantes.

Con el propósito de cumplir con este requisito esencial del derecho notarial, el Art. 15(e) de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2033(e), dispone que toda escritura pública deberá contener en su parte dispositiva y expositiva, entre otras, "[l]a fe expresa del notario de su *conocimiento personal de los otorgantes o, en su defecto, de haberse asegurado de su identidad por los medios establecidos por este Capítulo*". (Énfasis suplido.)

Se requieren tres (3) elementos esenciales al momento de identificar a los otorgantes en la autorización de una escritura pública: (*a*) la comparecencia física de cada uno de los otorgantes ante el notario autorizante; (*b*)

que sea en presencia de dicho funcionario que se otorgue el acto notarial, y (c) que el notario conozca a cada uno de los otorgantes o, en su defecto, que se asegure de su identificación mediante la *utilización subsidiaria* de los medios supletorios que permite el Art. 17 de la Ley Notarial de Puerto Rico, *supra*. Estos tres (3) requisitos esenciales constituyen lo que se conoce en el lenguaje notarial como la *fe de conocimiento*. *In re Cruz Cruz*, supra, pág. 454; *In re Olmo Olmo*, 113 D.P.R. 441, 452 (1982). La *fe de conocimiento* es el mecanismo esencial para lograr correspondencia real y legítima entre la persona otorgante de una escritura pública y su firma. Esto es, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento de una escritura pública. *In re Medina Lugo*, 136 D.P.R. 120 (1994); *In re Rodríguez Gerena I*, supra; *In re Toro, Jr.*, 131 D.P.R. 824 (1992); *Ramírez Lebrón v. Registrador*, supra; *In re Cruz Cruz*, supra, pág. 451; *In re Olmo Olmo*, supra, pág. 451, y *Sucn. Santos v. Registrador*, supra, pág. 837. Por lo tanto, lo importante de la fe del conocimiento es asegurar que el compareciente sea quien dice ser. *Ramírez Lebrón v. Registrador*, supra, págs. 85–86. Es por esta razón que la ley es clara al establecer que *sólo* en defecto del conocimiento personal de los otorgantes de un negocio jurídico, el notario podrá recurrir a los medios supletorios de identificación que dispone la ley.

▪ En efecto, el citado artículo 17 de la actual legislación notarial dispone que serán medios supletorios de identificación, en defecto del conocimiento personal del notario:

(a) *La afirmación de una persona, que conozca al otorgante y sea conocida por el notario, siendo aquélla responsable de la identificación y el notario de la identidad del testigo.*

(b) La identificación de una de las partes contratantes por la otra, siempre que de esta última dé fe de conocimiento el notario.

(c) *La identificación por documento de identidad con retrato y firma, expedido por las autoridades públicas* competentes del

Estado Libre Asociado de Puerto Rico, de los Estados Unidos, o de uno de los estados de la Unión, cuyo objeto sea identificar a las personas o por pasaporte debidamente expedido por autoridad extranjera. (Énfasis suplido.) 4 L.P.R.A. sec. 2035.

■ Los testigos de conocimiento serán responsables de la identificación de los otorgantes, igualmente lo será el otorgante que testifique sobre la identidad de otros otorgantes no conocidos por el notario y el notario lo será del conocimiento de tales testigos.)[7]

En el caso de autos, los recurrentes aducen que la interpretación que hace la Registradora es restrictiva, limitada e inoperante, ya que en la interpretación liberal del Art. 17(c) de la Ley Notarial de Puerto Rico, *supra,* que hace la Regla 30 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, el notario autorizante no está restricto en sus medios para identificar a los otorgantes. Entienden que lo esencial es que el notario identifique a los otorgantes a través de *cualquier* medio supletorio que provea y/o facilite esa identificación. A tales efectos, los recurrentes alegan que las tarjetas de identificación utilizadas por el notario Rádinson Pérez sí están dispuestas por el citado Artículo 17(c), según la Regla 30 del Reglamento Notarial de Puerto Rico, *supra,* que la interpreta.[8]

---

[7] Véase, además, la Regla 30 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, que fue adoptado de conformidad con las disposiciones de la Ley Notarial de Puerto Rico.

[8] La Regla 30 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, aprobado el 30 de junio de 1995, dispone:

"(A) El testigo de conocimiento tendrá como función identificar a los comparecientes a quienes el notario no conozca personalmente. El notario será responsable de su conocimiento personal del testigo de conocimiento.

"(B) Podrán ser testigos de conocimiento los parientes y empleados del notario autorizante y los parientes de los comparecientes sin importar el grado de consanguinidad o de afinidad.

"(C) Cualquier parte contratante que fuere conocida del Notario puede ser testigo de conocimiento de la otra parte contratante.

"(D) Cuando el Notario utilizare uno de los documentos de identidad que establece el [Artículo 17(c) de la Ley Notarial de Puerto Rico] para identificar a los comparecientes, bastará con que denomine el documento sin necesidad de describirlo o relacionarlo."

Los recurrentes fundamentan su planteamiento anterior mediante un fragmento del Comentario de la Regla 29 del Reglamento Notarial(9) que, en su parte pertinente, dispone:

> Sabido es que el notario no está restricto en sus medios para identificar a los otorgantes. Su profesión de jurista le provee variados recursos para asegurarse de tal identidad. Tiene el deber de ser acucioso y [esf]orzado en la función de identificar aquellos quienes ante él contratan o actúan. Este deber implica que el notario está obligado a hacer constar en el instrumento el método supletorio específico que utilizó para cerciorarse de la identidad de aquellos otorgantes a quienes no conozca personalmente.

No podemos aceptar la interpretación que le dan los recurrentes al comentario antes expresado. Éste es un párrafo explicativo de la Regla 29 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, en cuanto a los medios que puede recurrir el notario autorizante para asegurarse de la identidad de los otorgantes y poder dar fe del *conocimiento personal* de éstos que ha derivado de su observación y trato durante las etapas preliminares al acto notarial. En estos casos, el notario no está restricto de la misma manera que según el Art. 17(c) de la citada ley, en sus medios de identificación para cerciorarse de que las personas sobre las que dará fe de su *conocimiento personal* son quienes afirman ser.

 Esta forma de adquirir *conocimiento personal* de los otorgantes tiene su génesis en nuestra decisión *In re*

---

(9) La Regla 29 del Reglamento Notarial de Puerto Rico dispone lo siguiente:

"El notario tiene el deber primario de asegurarse de su conocimiento personal de los comparecientes. De conocerlos, tiene el deber de dar fe expresamente de dicho conocimiento en el instrumento. A estos efectos, basta el conocimiento que el notario deriva de su juicio crítico a través de su relación y su observación de los comparecientes en etapas preliminares al otorgamiento.

"De no conocer personalmente a los comparecientes, el notario así lo hará constar y, entonces, utilizará los medios supletorios de identificación que establece [la Ley Notarial de Puerto Rico]." 4 L.P.R.A. Ap. XXIV.

*Cancio Sifre*, 106 D.P.R. 386, 394 (1977), en la cual dispusimos lo siguiente:

> La Ley no exige el conocimiento "personal" de otorgantes por el notario en el concepto de una relación previa a su llegada a la notaría. *Basta el conocimiento que el notario deriva de su observación de los otorgantes identificándose mutuamente en las etapas preliminares del acto jurídico notarial*, toda vez que, con rarísimas excepciones en que dos partes se ponen de acuerdo para defraudar, los otorgantes tienen tanto interés como el notario en la trasmisión de un título válido, y debe suponerse que en los contratos bilaterales el que contrata con una persona obligándose a su favor y estipulando derechos, le conoce perfectamente. (Énfasis suplido.)

Es a estos efectos que el notario autorizante no está restringido en sus medios para identificar otorgantes, ya sea mediante testigos de conocimiento o mediante otros recursos que aseguren tal identidad.[10] En vista de lo anterior, queda claro que el notario está autorizado a dar fe del *conocimiento personal* de los otorgantes, ya sea porque los conocía personalmente previo al otorgamiento en cuestión o porque los conoció en ocasión del otorgamiento o en etapas preliminares.[11] Por lo tanto, la liberalidad a la que hacen alusión los recurrentes en cuanto al uso ilimitado de múltiples medios de identificación de los otorgantes de un negocio jurídico aplica *sólo* en aquellos casos en los que el notario adquiere *conocimiento personal* de dichos otorgantes en las etapas previas al acto notarial. No le aplica a los medios supletorios que dispone la Regla 30 del Reglamento Notarial de Puerto Rico, *supra*, en caso de falta de conocimiento personal de los otorgantes por el notario.

■ Anteriormente, hemos señalado que la fe del conocimiento de los otorgantes es de importancia suprema e

---

[10] *In re Cancio Sifre*, supra, pág. 394. Véase, además, Comentario de la Regla 29 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV.

[11] S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, Ed. especial, San Juan, Pubs. STP, Inc., 1995, Cap. IX, pág. 9.10.

imperiosa en la gestión notarial,([12]) y que el método primario y preferente de identidad de los otorgantes de un negocio jurídico es el conocimiento personal y directo que el notario tenga de ellos. *Ramírez Lebrón v. Registrador*, supra, págs. 86–87. *Sólo* en defecto de tal conocimiento personal de los otorgantes, o de alguno de ellos, y *no antes*, es que se activa el mandato estatutario al efecto de recurrir a los· medios supletorios de identificación dispuestos en el Art. 17(c) de la Ley Notarial de Puerto Rico, *supra*, y la Regla 30 del Reglamento Notarial, *supra*. Por lo tanto, los medios supletorios de identificación son un *mecanismo subsidiario de identidad* que *sólo* puede utilizarse cuando el notario autorizante no tiene o no ha podido adquirir *conocimiento personal* de alguno o todos los otorgantes de un negocio jurídico.

Este mecanismo subsidiario de identidad tiene su génesis en la Ley Notarial de Puerto Rico de 1957, derogada, y ha sido incorporado en la actual Ley Notarial de Puerto Rico aunque con ciertas modificaciones. Según la Ley Notarial de Puerto Rico de 1957, *supra*, la selección del medio supletorio de identificación que se utilizaba se hacía, a su vez, de forma subsidiaria; a saber, en el orden que claramente establecía dicha sección.

La Sec. 16 de la Ley Notarial de Puerto Rico de 1957, derogada, 4 L.P.R.A. sec. 1016 (ed. 1978), disponía que:

> *Los Notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos.* También darán fe acerca de la edad, estado, profesión y vecindad de los otorgantes, con relación al dicho de los mismos, y en caso de que fuera casada la persona que aparezca como adquirente del derecho que es objeto del contrato, se expresará el nombre y apellido del cónyuge que no comparezca al otorgamiento. *En casos graves y extraordinarios en que no sea posible consignar por completo estas circunstancias, expresarán cuanto sobre ello les conste de propia*

---

([12]) Véanse: *Ramírez Lebrón v. Registrador*, 131 D.P.R. 76, 86 (1992), e *In re Olmo Olmo*, supra, pág. 454.

*ciencia y manifiesten los testigos. El testigo o testigos de conoci-
miento, deberán ser, en todo caso, personas bien conocidas del
notario, y éste deberá dar fe de ello en el documento. En tales
casos graves y extraordinarios en que a un notario le sea impo-
sible dar fe del conocimiento de los otorgantes, ni puedan éstos
presentar un testigo o testigos de conocimiento, lo expresará así,
designando los documentos que le presentaren como prueba de
su nombre, estado y vecindad, y refiriendo además el motivo del
caso grave o extraordinario.* (Énfasis suplido.)

Es decir, en ausencia del conocimiento personal del no-
tario, éste debía recurrir: (1) al método del testigo de cono-
cimiento, el cual tenía que ser bien conocido del notario, y
(2) en ausencia del testigo de conocimiento, pero sólo en
casos *graves y extraordinarios*, podía utilizar el método de
identificación mediante documentos de identidad. *In re Pé-
rez Rodríguez*, supra, pág. 550, e *In re Olmo Olmo*, supra,
pág. 462.

■ Con la aprobación de la nueva ley, esta sección
sufrió ciertas modificaciones que intentan evitar el pro-
blema de la suplantación de las partes en la autorización
de un negocio jurídico. Según surge del propio historial le-
gislativo, el actual artículo 17, *supra*, tiene el propósito de
establecer una distinción entre la *fe de conocimiento* y la *fe
de identificación*. La "fe de conocimiento es cuando el nota-
rio conoce y está siempre obligado a conocer, y que es el
conocimiento 'a priori' que de las partes tiene; y fe de iden-
tificación cuando conoce también, pero recurriendo a los
distintos medios supletorios que debe darle la ley, lo que
constituye el conocimiento notarial". Expediente del Susti-
tutivo al P. de la C. 203 sobre la Ley Notarial de Puerto
Rico, 1985–1988, pág. 10. Es decir, la fe de conocimiento
sólo la puede dar el notario cuando conoce o adquiere co-
nocimiento personal de los otorgantes. Mientras que la fe
de identificación la da cuando identifica a los otorgantes
mediante alguno de los medios supletorios que dispone la
ley.

Esta distinción tiene el propósito de adaptar la fe de

conocimiento notarial a nuestra realidad social actual y evitar que el notario continúe incurriendo en lo que no es afín a su función: hacer constar como cierto lo que no es. A estos efectos, el Legislador aclara que esta innovación *"no representa ni debe representar laxitud y ausencia de rigurosidad en dicho proceso de identificación, ya que existe una íntima relación y vínculo lógico entre el conocimiento directo o indirecto de los comparecientes en un instrumento público, y la calificación de capacidad sirve para muy poco"*. Expediente del Sustitutivo al P. de la C. 203 sobre la Ley Notarial de Puerto Rico, 1985–1988, pág. 10.

Tal es el interés del Legislador de mantener la rigurosidad y confiabilidad de este nuevo proceso de identificación notarial, que como parte de las modificaciones de la anterior Sec. 16 de la Ley Notarial de Puerto Rico, *supra*, dispuso que cuando el notario utilizara tarjetas de identificación para identificar a alguno o algunos de los otorgantes de un negocio jurídico, en defecto del conocimiento personal de ellos, las tarjetas tienen que ser expedidas por una autoridad pública competente del Estado Libre Asociado de Puerto Rico, de Estados Unidos, de uno de los estados de la Unión, o tratarse de un pasaporte expedido debidamente por autoridad extranjera. No obstante este interés de mantener la rigurosidad del proceso de identificación de los otorgantes de un negocio jurídico, el Legislador decidió suprimir del texto de la nueva ley la referencia a "casos graves o extraordinarios" que establecía un orden preferencial entre los medios supletorios disponibles.[13] Indudablemente, esta innovación, que carece de explicación en el historial legislativo de la Ley Notarial de Puerto Rico vigente, no tiene el alcance de eximir al notario de la responsabilidad de dar fe del conocimiento o, en su defecto, dar fe de la identificación de las partes. De ser necesario utilizar este último método, debe ceñirse estrictamente a los documen-

---

[13] Del historial legislativo de esta nueva ley no surge el porqué de esta modificación.

tos de identidad que cumplan con la Ley Notarial de Puerto Rico y su reglamento. Una vez el notario incorpora en el documento a otorgarse la fe de identificación, cumpliendo con estas exigencias, basta con que exprese que recurrió al método supletorio por no conocer a los otorgantes.

## IV

En el caso de autos, el notario Rádinson Pérez identificó a los otorgantes mediante documentos de identidad no dispuestos en el Art. 17(c) de la Ley Notarial de Puerto Rico, *supra*. Dicho artículo es claro al disponer que los documentos de identidad a utilizarse para identificar a los otorgantes son aquellos expedidos "por las *autoridades públicas competentes del Estado Libre Asociado de Puerto Rico, de los Estados Unidos, o de uno de los estados de la Unión, cuyo objeto sea identificar a las personas o por pasaporte debidamente expedido por autoridad extranjera*". (Énfasis suplido.) Íd.

▉ Los documentos de identidad, que hasta este momento se han considerado como aceptables para identificar a los otorgantes de un acto notarial al amparo de lo dispuesto en el Art. 17(c) de la Ley Notarial de Puerto Rico, *supra*, y el Reglamento Notarial de Puerto Rico, *supra*, son los siguientes: (1) la licencia de conducir; (2) la tarjeta electoral; (3) el pasaporte; (4) las tarjetas de identificación de empleados expedidas por las distintas agencias gubernamentales, y (5) otros de análoga naturaleza, *siempre y cuando cumplan con los requisitos de llevar fotografía y firma, y que sean expedidos por una autoridad pública de Puerto Rico, Estados Unidos o de uno de sus estados*.)[14]

---

[14] Véanse: *In re Olmo Olmo*, supra, pág. 462, y Torres Peralta, *op. cit.*, pág. 9.18.

Surge de los hechos de este caso que el documento presentado por Digna Esther Castro Rivera es claramente una tarjeta de identificación de empleada de una institución bancaria privada, expedida por un patrono privado. Igualmente, el documento presentado por René Cintrón Ramos tampoco ha sido expedido por las autoridades públicas antes mencionadas, aun cuando se trata de una identificación de empleado de una organización reconocida internacionalmente. Dicho documento fue expedido por las Naciones Unidas y no por una autoridad pública del estado de Nueva York o de Estados Unidos.

Forzoso es concluir que los documentos de identidad aceptados por el notario de autos para identificar a los recurrentes, a saber, la tarjeta de identificación de empleado de las Naciones Unidas de Cintrón Ramos y la tarjeta de identificación de empleada del Citibank de Castro Rivera, no cumplen con los requisitos exigidos por la Ley Notarial de Puerto Rico y su reglamento. Carentes los documentos en cuestión del requisito de ser expedidos por autoridad pública de Puerto Rico, Estados Unidos o de uno de los estados de la Unión, ni tratándose de pasaportes expedidos por autoridad extranjera, éstos no constituyen documentos fehacientes ni legítimos de la identidad de los recurrentes a la luz de las disposiciones de la Ley Notarial de Puerto Rico.

▬ Reiteradamente hemos advertido sobre la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato estatutario sobre la comparecencia y el conocimiento de los otorgantes, incluso al utilizar las medidas supletorias de identificación visualizadas en la Ley Notarial de Puerto Rico. Véanse: *In re Medina Lugo*, supra; *In re Vargas Hernández*, supra; *In re Rodríguez Gerena I*, supra, pág. 697; *In re Pedraza González*, supra, pág. 17, e *In re Cruz Cruz*, supra, pág. 454.

▬ Este Tribunal tiene el deber de interpretar dichas disposiciones de la Ley Notarial de Puerto Rico to-

mando en consideración los fines que éstas persiguen, de manera que dicha interpretación se ajuste " 'al fundamento racional o fin esencial de la ley' y a la política pública que la inspira". *Ramírez Lebrón v. Registrador*, supra, pág. 88. Es en cumplimiento de lo anterior que concluimos que para que un documento de identidad pueda ser considerado como uno de los dispuestos al amparo del Art. 17(c) de la Ley Notarial de Puerto Rico, *supra,* no sólo *tiene* que llevar fotografía y firma del otorgante, sino que también *tiene* que haber sido expedido por las autoridades correspondientes a que se refiere dicho artículo.

██ El hecho de que el notario Rádinson Pérez no conociera personalmente a los comparecientes y no utilizara los medios supletorios adecuados para la correcta identificación de los recurrentes, tiene como consecuencia que los documentos así autorizados sean anulables por carecer de la fe de conocimiento requerida por ley. Al respecto, el Art. 35 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2053, dispone que "[s]erán anulables los instrumentos públicos en que el notario no dé fe del conocimiento de los otorgantes, o no supla esta diligencia en la forma establecida en la sec. 2035 de este título". Véase, además, S. Torres Peralta, El Derecho Notarial Puertorriqueño, Ed. especial, San Juan, Pubs. STP, Inc., 1995, pág. 9.20.

En el caso ante nos, la Registradora actuó correctamente al calificar las escrituras en cuestión y denegar su inscripción. Dentro de la facultad calificadora de un Registrador se encuentra la de examinar que el notario autorizante haya cumplido con las formas extrínsecas de los documentos notariales presentados para su inscripción. Es decir, que el notario en cuestión haya cumplido con los requisitos formales que la Ley Notarial de Puerto Rico exige para que un documento público sea inscribible en el Registro, tales como: la capacidad de los otorgantes y *la identidad de éstos o fe de conocimiento, entre otros.* Por lo tanto,

la calificación de la Registradora Borrás Marín no excedió las facultades que por ley le son permitidas. Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2267.

Resolvemos, por lo tanto, que una tarjeta de identificación de empleado de una empresa o institución privada expedida por un patrono privado y una tarjeta de identificación de empleado de las Naciones Unidas expedida por dicha organización internacional no constituyen un medio supletorio de identidad de los dispuestos por el Art. 17(c) de la Ley Notarial de Puerto Rico, *supra*.

En vista de lo antes expuesto, *confirmamos las anotaciones denegatorias de inscripción de la Registradora.*

La Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Fuster Berlingeri concurrieron con el resultado sin una opinión escrita.