Asunto: LIC. OMAR CANCIO SIFRE, notario.

*Número:* 1432 *Resuelto:* 14 de octubre de 1977

388

*Ramón A. Cancio, Hiram R. Cancio* y *José Angel Rey,* abogados del Lcdo. Omar Cancio Sifre.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Este caso tiene la particularidad de ser uno en el cual la práctica notarial de un abogado ha quedado sujeta a evaluación ética, y al ejercicio de la facultad inherente de este Tribunal para regular la abogacía sin queja promovida por parte perjudicada, sino a instancias[1] del propio abogado.

El promovente Lic. Cancio es accionista principal y "prácticamente el único accionista" de Legal Finance Corporation, corporación que se dedica a la tramitación y concesión de préstamos hipotecarios y que actúa como banco hipotecario debidamente autorizado mediante licencias concedidas por el Estado Libre Asociado, la Administración Federal de Hogares (FHA) y la Administración de Veteranos.

En declaración jurada el promovente describe así la relación entre bufete y corporación:

"La corporación no tiene junta de directores. Su negocio lo dirige y atiende un gerente general con personal subalterno a su cargo. No ocupo posición alguna en la corporación ni inter-

---

[1] La naturaleza inherente de la facultad del Tribunal Supremo para admitir o destituir abogados lo libera de toda rutina procesal y le permite seleccionar el procedimiento conveniente, sin más limitación que la garantía de un debido proceso. Art. 9, Ley de 11 de marzo de 1909 (4 L.P.R.A. sec. 735); *In re Pagán,* 71 D.P.R. 761 (1950); *In re Liceaga,* 82 D.P.R. 252 (1961); *In re Tormes,* 30 D.P.R. 267 (1922). En el aspecto notarial la legislación orienta la facultad reguladora en el último párrafo del Art. 38 de la Ley Notarial de 1956, según enmendado. 4 L.P.R.A. sec. 1038.

vengo en su administración diaria. Soy su consejero legal, pero no cobro sueldo por estos servicios aunque ocasionalmente se me ha concedido un bono anual. Recibo los dividendos a que tengo derecho como accionista.

Actúo también como notario en la preparación y otorgamiento de las escrituras relacionadas con los préstamos concedidos por la corporación y ésta me paga por cheques, previa autorización escrita del prestatario, los honorarios correspondientes por el trabajo de abogado y notario que realizo en cada caso. Mi oficina profesional está enteramente separada de las oficinas de la corporación aunque están ubicadas en el mismo edificio. En mi oficina no hay anuncio alguno de la corporación, ni en las de ésta aparece mi nombre ni anuncio alguno referente a mis servicios profesionales.

Como siempre me ha preocupado que pueda malinterpretarse mi condición de accionista casi único de Legal Finance Corporation y los servicios que le presto como abogado y notario, siempre me he mantenido desligado de la administración cotidiana de su negocio. Por este mismo motivo, luego de aprobado en 1970 el Código de Ética Profesional vigente, discutí con varios compañeros abogados los alcances del Canon 37 y aunque el mismo es algo ambiguo llegué al convencimiento de que sus disposiciones no proscribían mi relación profesional con Legal Finance Corporation en la forma en que yo mantenía esa relación y Legal Finance Corporation operaba su negocio. . . .

Es de conocimiento general que todas las instituciones financieras que se dedican en Puerto Rico al negocio de préstamos hipotecarios utilizan a sus propios abogados para que hagan el estudio de cada caso y autoricen como notarios las escrituras correspondientes. Esto se debe al hecho de que las instituciones financieras confían en sus propios abogados para asegurarse de la legitimidad del negocio jurídico antes de desembolsar el préstamo. Es por esta razón que yo le he servido a Legal Finance Corporation como abogado y notario, manteniendo mi práctica profesional separada de su negocio. Siempre he considerado que mi condición de accionista de dicha corporación, de la cual no soy oficial ni funcionario, no añade en verdad a mi actuación profesional más conflicto que el que tiene el abogado o el abogado y accionista de cualquier otra institución financiera que a la vez actúa como notario en el otorgamiento de las escrituras en que su cliente es parte. Para evitar este posible conflicto y salva-

guardar el derecho de los prestatarios de Legal Finance Corporation a consultar el asunto con sus propios abogados, siempre les advierto de este derecho antes del otorgamiento y les digo que pueden llevarse copia de las escrituras para consultar con su abogado y que éste puede acompañarlos el día del otorgamiento. Así lo han hecho algunos, aunque la gran mayoría de los prestatarios no ha ejercitado este derecho."

El veterano José Juan Rivera Hernández obtuvo de Legal Finance Corporation un préstamo de $47,500.00 para comprar una casa([2]) y para viabilizar la operación el 11 de junio de 1976 comparecieron a la notaría del Lic. Cancio los vendedores del inmueble que eran Rafael Nieves Díaz y una mujer que él presentó como su esposa Ana María Rodríguez; y el comprador prestatario Rivera Hernández acompañado de una mujer que identificó al notario como su esposa Myrta Yolanda Rodríguez. En dicho acto el notario concernido autorizó la escritura Núm. 224 de compraventa, en la que no fue parte la corporación; y la Núm. 225 de "Primera Hipoteca" constituida en garantía de pagaré por $47,500.00 de principal, interés al 8 1/2% anual y créditos accesorios, amortizable en plazos mensuales de $365.28 desde agosto de 1976 hasta julio de 2006, en cuyo documento suscrito por el prestatario Rivera Hernández y su presunta esposa, compareció en representación de la acreedora Legal Finance Corporation, su gerente general Thelma A. Paz.

Legal Finance Corporation cedió el crédito hipotecario mediante endoso del pagaré a James T. Barnes of P.R. Inc., y como no pagara el comprador y deudor hipotecante ni aun el primer plazo mensual, presentó demanda en ejecución del crédito contra él y su esposa Myrta Yolanda quien al ser emplazada no tardó en acudir a la oficina de Legal Finance donde informó a su gerente Paz y al Lic. Cancio que ella era la esposa separada del veterano Rivera Hernández y que no

---

([2]) La propiedad se describe como rústica consistente en predio de media cuerda y casa de concreto en el barrio "Achiote" de Naranjito.

había firmado ni la escritura de compraventa ni la de hipoteca. La corporación citó a los otorgantes de dichos documentos para depurar la situación y se presentó Luis Viera con su esposa Sonia Ivette Rivera declarando ésta ser hermana de Rivera Hernández y la persona que firmó las escrituras suplantando a Myrta Yolanda. También se presentó una hija del vendedor Nieves Díaz quien dijo haber firmado como esposa de éste con el nombre de Ana María Rodríguez, quien era su señora madre fallecida(3) hacía un año. Se comprobó un caso de doble suplantación de otorgantes de cuyo conocimiento personal da fe el notario en ambas escrituras. Legal Finance Corporation asumió la pérdida recomprando el pagaré de James T. Barnes y el notario promovente ha sido diligente en tramitar una acción sobre nulidad de escrituras en virtud de la cual ya se han cancelado los asientos de Registro a que dio lugar este negocio espúreo y se restituyó el título del inmueble afectado a su condición original, sin perjuicio para los hijos herederos de la extinta Ana María Rodríguez.

El Lic. Cancio dirigió una carta al Juez Presidente el 1° de abril último en la que informa que ha sido "víctima de un doble engaño, aparentemente urdido . . . para defraudar a la corporación de la cual soy principal accionista" y le pide que proceda "según estime apropiado." Eventualmente el asunto fue llevado a la atención del Pleno que el 26 de mayo último emitió Resolución que en lo pertinente dice:

"Vistos la carta y documentos anejos dirigida el 1° de abril de 1977 al Sr. Juez Presidente por el notario Lic. Omar Cancio Sifre en relación con el otorgamiento por éste de las Escrituras Núms. 224 y 225 de 11 de junio de 1976, y vistos los Arts. 16 y 27 de la Ley Notarial (4 L.P.R.A. secs. 1016 y 1027) en su exigencia de que los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos, tenga dicho Notario plazo

---

(3) Ana María Rodríguez falleció en el Barrio "Achiote" de Naranjito, el 6 de noviembre de 1975.

hasta el 17 de junio de 1977 para informar bajo afidávit lo siguiente:

A. Carácter y extensión del perjuicio, si alguno, ocasionado a tercera persona como resultado del otorgamiento de dichas escrituras, expresando si ha sido subsanado, acompañando declaración de la persona afectada y resarcida en su caso.

B. Posible conflicto entre su condición de accionista de Legal Finance Corp. y su actuación como Notario en documentos en que dicha corporación es parte otorgante."

Esta última cuestión de incompatibilidad fue originada por el Tribunal. El promovente Lic. Cancio ha contestado sosteniendo su posición de que no ha infringido la Ley Notarial ni incurrido en falta de ética, y ahora resolvemos:

## I

### Identidad de Partes

■ Instruye el Art. 16 de la Ley Notarial que es la Núm. 99 de 27 de junio de 1956 (4 L.P.R.A. sec. 1016) que los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos, y que también darán fe acerca de la edad, estado, profesión y vecindad de los otorgantes, con relación al dicho de los mismos. La falta de este requisito aparece sancionada en el Art. 20 de la Ley Notarial (4 L.P.R.A. sec. 1020) que declara anulables los instrumentos públicos en que el notario no certifique sobre el conocimiento de los otorgantes o no supla esta diligencia con un testigo o testigos de conocimiento, a menos que por medio de una escritura pública o acta notarial, o por nota a continuación de las firmas en el instrumento, el mismo notario que autorizó la escritura defectuosa, dé fe de que conocía a los otorgantes al tiempo de su otorgamiento. La omisión de tal requisito se consideró vicio de nulidad en *Diez de Andino* v. *Registrador*, 25 D.P.R. 477, 479–80 (1917).

■ En su comparecencia escrita el promovente Lic. Cancio señala la imposibilidad para los notarios de cumplir

con el citado Art. 16 de la Ley Notarial porque el crecimiento poblacional, la movilidad de la gente y el desarrollo de grandes núcleos urbanos les impide conocer o identificar a través de testigos a los otorgantes que ante ellos comparecen. Ha podido añadir que la identificación de los otorgantes no pertenece a lo formal del documento, que deba exigírsele al Notario, ni siquiera al mundo de lo jurídico, sino al del exterior que aquél no puede captar ni por su vista, ni por su oído, ni por sus sentidos. Siendo el otorgante, únicamente, quien sabe si dice o no la verdad, al declarar ser determinada persona, es él quien únicamente puede aportar los medios para su identificación; está fuera de la función y de las posibilidades del Notario como tal y como individuo. Escobar de la Riva, *Tratado de Derecho Notarial*, pág. 384 (1957). El problema lo es solo en apariencia inducida por la retórica. La Ley no exige el conocimiento "personal" de otorgantes por el notario en el concepto de una relación previa a su llegada a la notaría. Basta el conocimiento que el notario deriva de su observación de los otorgantes identificándose mutuamente en las etapas preliminares del acto jurídico notarial, toda vez que, con rarísimas excepciones en que dos partes se ponen de acuerdo para defraudar, los otorgantes tienen tanto interés como el notario en la trasmisión de un título válido, y debe suponerse que en los contratos bilaterales el que contrata con una persona obligándose a su favor y estipulando derechos, le conoce perfectamente. El notario no está restringido en sus medios para identificar otorgantes al uso de testigos de identificación. Su profesión de abogado le provee variados recursos para asegurarse de tal identidad. Quizás el notario al observar la patente diferencia en edad entre el vendedor Nieves Díaz y la hija que presentó como esposa pudo con una pregunta ingenua abortar la trama de que fue víctima.

La transformación de nuestra economía, el incremento poblacional concentrado en grandes ciudades sin duda

hacen más laboriosa para el notario la identificación de otorgantes, pero no justifican degradar la fe pública y el valor de legitimación que tan pesadamente descansan en esa dación de fe de conocimiento de las personas y de haberse el notario asegurado de su identidad. Temprano en el Derecho notarial afloró el mandato: "e debe ser muy acucioso el Escribano de trabajarse de conocer los omes a quien faze las cartas, quién son y de qué lugar, de manera que non pueda ser fecho ningún engaño." (Ley 68, título 18, Partida 3ª.) La garantía que para el tráfico jurídico y legitimación de actos representa el citado requisito del Art. 16 de la Ley bien vale que el notario sea acucioso y esforzado en revelar la identidad de quienes ante él contratan o actúan.

## II

*La Incompatibilidad*

 Como se ha indicado anteriormente, el Lic. Cancio es para todo fin práctico, el único accionista de Legal Finance Corporation y desde el 1968 viene autorizando escrituras en las que no podemos pasar por alto que dicha corporación tiene de hecho dos figuras interesadas en el bienestar económico y el mayor provecho de la financiera: su gerente y su único accionista. En el historial del Sr. Cancio no hay constancia de que durante tantos años esa dualidad de dueño y notario haya tachado en modo alguno su práctica notarial. Mas las normas de ética en su vigencia no distinguen, ni pueden discriminar entre los que en situación de conflicto tienen fortaleza para resistir la humana tentación de adelantar sus intereses personales, y los débiles de voluntad que sucumben en la oportunidad pecaminosa. La incompatibilidad va más allá de la prohibición del Canon 37 de Ética (4 L.P.R.A. Ap. IX) (⁴) sobre el uso por el abogado de negocios y actividades

---

(⁴) Canon 37. *Participación del abogado en actividades comerciales*

"La participación del abogado en negocios o actividades de venta de bienes, agencias de cobro, fianzas u otros servicios comerciales propios o

comerciales para "alimentar" su práctica profesional. El Art. 8 de la Ley Notarial (4 L.P.R.A. sec. 1008) prohíbe al notario autorizar contratos en que él intervenga como parte, que contenga disposición en su favor, o en que alguno de los otorgantes sea pariente suyo dentro del cuarto grado de consanguinidad o segundo de afinidad. Y el Art. 20 (4 L.P.R.A. sec. 1020) declara nulos los instrumentos públicos en que haya intervenido como parte el notario que los autorice o contengan alguna disposición a favor de éste. Estos artículos responden al propósito de preservar la figura del Notario como funcionario imparcial, que recibe, expone y legitima la voluntad de los que ante él comparecen sin tomar bando, sin inclinarse a un lado u otro. Su inteligencia y su lealtad están comprometidas con una función ilustrativa que sirva y proteja a todas las partes por igual. "Cuando en 1906," ha dicho este Tribunal,[5] "la Asamblea Legislativa derogó la Ley del Notariado declarando que 'solo podrán en lo sucesivo ejercer dicha profesión [notarial], los abogados que hayan sido admitidos a practicar como tales ante las Cortes de Justicia por la Corte Suprema' (Ley de 8 de marzo de 1906, Leyes de ese año, pág. 141), se propuso fortalecer los recursos intelectuales del notariado y enriquecer su función social, poniendo a disposición de la sociedad un notario que es además un técnico conocedor del Derecho. Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la

---

pertenecientes a otras personas no es una actividad propia de la buena práctica de la profesión si tal negocio o actividad tiene el fin directo o indirecto de proporcionarle trabajo profesional lucrativo que de otra forma el bufete no hubiese obtenido."

[5] *In re Meléndez Pérez*, 104 D.P.R. 770, 774 (1976).

transacción que ante él se concreta. ¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad? ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado. El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados del significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; el notario que limita su intervención rutinaria a leer o dar a leer el documento a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública."

██ "[L]a parte más digna y más noble de la actuación notarial es la que no queda registrada en la escritura, porque el más perfecto ensamblamiento de los derechos y obligaciones de las partes no está en la simple enunciación de sus voluntades, sino en la interpretación previa de sus propósitos y hasta en la captación lógica de sus intenciones; y esto, tanto como el consejo oportuno o la opinión jurídica o económica o social, la explicación leal y honesta de la ley, el patrocinio moral y hasta la misma autoridad personal del Notario, son elementos imponderables e intraducibles en el acto autorizado, que en su forma externa jamás acusará el más leve indicio de esa intervención, infinitamente más importante, más trascendente y más decisiva antes de la concertación del contrato, que en el entretejido posterior de sus cláusulas." Negri, según citado por Pelosi en *La unidad de acto en el Derecho Notarial argentino*, págs. 185–186.

■ Reconocemos la importancia que para los bancos y demás entidades financiadoras representa que un notario de su confianza autorice los documentos que constituyen la garantía de su dinero y no encontramos conflicto en que el abogado del banco actúe como notario en tales negocios. El abogado no es empleado de su cliente y mantiene una independencia (⁶) en sus determinaciones profesionales que propicia su intervención como notario en actos y contratos en que su cliente de asesoría es parte. De ahí que esa relación no esté proscrita en la Ley Notarial.

■ El caso que nos ocupa, sin embargo, es el de un notario único accionista de la corporación que autoriza instrumentos en que ésta es parte. La ficción legal que tipifica la corporación como persona jurídica distinta (⁷) de sus accionistas, si bien es suficiente para excluir las escrituras autorizadas por el Lic. Cancio de la sanción de nulidad dictada por el Art. 20 de la Ley Notarial, pues la razón de nulidad no debe extenderse más allá de sus propios términos legislados, no lo es para satisfacer la norma ética sobre incompatibilidad. Concedido que en estricto derecho el notario promovente al autorizar una de estas escrituras no tiene la calidad de "parte" a cuyo favor se establecen disposiciones en el instrumento, en el más profundo sentido ético es inescapable la realidad de que actúa en un ámbito que concierne y toca muy de cerca a sus propios bienes. La ética es una en su integridad, indemne al fraccionamiento que en ley separa la corporación de su accionista. "El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacri-

---

(⁶) La misión de un abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. Canon 18 (4 L.P.R.A. Ap. IX).

(⁷) Toda corporación tendrá facultad para subsistir jurídicamente, aun a perpetuidad. 14 L.P.R.A. sec. 1202.

ficios personales y debe evitar hasta la apariencia de conducta profesional impropia." Canon 38.

 Un notario no deberá autorizar documentos públicos en que es parte una corporación por él controlada económicamente como accionista mayoritario. La norma no está específicamente definida en los Cánones de Ética Profesional, pero aun así es inherente a la responsabilidad social y profesional de los juristas y a la conducta moral que se espera de todo miembro de la profesión. (Código de Ética—Preámbulo). La incompatibilidad del notario se funda no sobre su intención de aprovecharse, "sino sobre que esta ventaja se produzca efectivamente." Escobar de la Riva, *opus cit.* págs. 211–212.

En el caso de la suplantación este notario fue víctima de personas inescrupulosas y él actuó sin pérdida de tiempo para corregir las consecuencias de su inadvertencia, restableciendo la titularidad afectada por la anomalía. Estos hechos no requieren ulterior acción del Tribunal más allá de una reiteración de la obligación del notario de establecer la identidad de los otorgantes. En el caso de incompatibilidad la ausencia de prohibición específica tanto en la Ley como en los cánones, bien pudo inducirlo a seguir una práctica notarial que como antes hemos señalado no acusa deshonestidad, aun cuando ha coexistido con un conflicto de intereses que debe cesar. Su acción originando *sua sponte* este procedimiento en busca de estricta depuración de su conducta profesional, sin que persona alguna la hubiera impugnado, es la más reciente muestra de su preocupación ética.

 Se resuelve con carácter prospectivo que un Notario no deberá autorizar documentos públicos en que sea parte una corporación de la cual tenga control económico en su condición de accionista mayoritario.

*Se dictará resolución ordenando el archivo de este asunto, previa intimación al Lic. Omar Cancio Sifre a que en observancia de la norma de incompatibilidad aquí declarada, cese*

*en su intervención como Notario autorizante de documentos públicos en que la Legal Finance Corporation sea parte, mientras mantenga el control económico de dicha corporación en su calidad de accionista mayoritario.*

El Juez Presidente Señor Trías Monge se inhibió. El Juez Asociado Señor Rigau no intervino.