El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal
Tenemos la ocasión para resolver si el Código Civil y la Ley Notarial de Puerto Rico (Ley Notarial) imponen al notario autorizante de un testamento abierto la obligación de conocer a los testigos instrumentales. Para ello, debemos determinar si la intervención de los testigos instrumentales en el otorgamiento del testamento abierto es en carácter de comparecientes. Finalmente, debemos resolver si la falta de dación de fe del conocimiento de los testigos instrumentales vicia de nulidad el testamento en cuestión.
I
El 17 de abril de 1990, el señor Wilfrid Caragol Rabel (señor Caragol Rabel o causante) otorgó un testamento abierto ante el notario Mario Zayas Cario.([1]) En dicho testamento el causante distribuyó su caudal hereditario en partes iguales entre sus siete hijos, a saber, Wilfrid Francis Gerard, Elena Matilde, Charles Louis, José Antonio, Alberto Bernardo, Agustín Anselmo y María Pilar del Carmen, todos ellos de apellidos Caragol Hernández (Sucesión Caragol).
*81 El 10 de septiembre de 2002, el señor Caragol Rabel falleció. Posteriormente, la Sucesión Caragol, por conducto de su abogado, presentó una Instancia ante el Registro de la Propiedad para solicitar la inscripción de su derecho hereditario sobre una propiedad del causante.
Dos años más tarde, la Hon. Sandra Valentín Díaz, Registradora de la Propiedad de la Sección III de San Juan (Registradora), le notificó al abogado de la Sucesión Caragol que el documento presentado adolecía de una falta que impedía la inscripción del derecho hereditario. En dicha notificación la Registradora indicó que, según se deducía de la Instancia presentada, algunos de los herederos de la Sucesión Caragol estaban casados y no se había expresado el nombre de sus respectivos cónyuges.
Oportunamente, la Sucesión Caragol presentó una Instancia Enmendada en la que proveyó la información solicitada, subsanando así el señalamiento notificado por la Registradora. ([2])
El 5 de mayo de 2005, la Registradora le cursó a la Sucesión Caragol una nueva notificación de falta que impedía la inscripción del derecho hereditario de la Sucesión Caragol.([3]) En esta ocasión la Registradora señaló que el testamento abierto otorgado por el señor Caragol Rabel adolecía de las faltas siguientes: (1) que de acuerdo con el Art. 634 del Código Civil de Puerto Rico, los testigos (instrumentales) no indicaron que ellos conocían al causante, y (2) que en conformidad con el Art. 17 de la Ley Notarial el notario no plasmó qué método utilizó para identificar a los testigos instrumentales y de conocimiento.([4])
*82 Insatisfecha con la referida calificación, la Sucesión Caragol presentó un Escrito de Recalificación.([5]) En el referido escrito, la Sucesión Caragol admitió que el notario autorizante del testamento abierto del señor Caragol Rabel no había consignado en el mismo que los testigos instrumentales conocían al causante y tampoco había indicado el método que utilizó para la identificación de éstos. No obstante, argüyó que dichas omisiones no impedían la inscripción del documento. Señaló, además, que ni el Código Civil ni la Ley Notarial exigen que el notario autorizante de un testamento abierto conozca a los testigos instrumentales.
Tras examinar el Escrito de Recalificación presentado por la Sucesión Caragol, la Registradora denegó nuevamente la inscripción del derecho hereditario.([6]) Fundamentó su denegatoria arguyendo que en conformidad con el Art. 17 de la Ley Notarial([7]) y con los Arts. 630-636 del Código Civil,([8]) el notario no había expresado que conocía a los testigos instrumentales ni había plasmado el método que utilizó para identificarlos.
Inconforme aún, la Sucesión Caragol acude ante nos, mediante un recurso gubernativo, aduciendo que la Registradora cometió el error siguiente:
NINGUNA DE LAS DOS OMISIONES DEL NOTARIO PRODUCEN AUTOMÁTICAMENTE LA NULIDAD DEL TESTA-MENTO, SINO QUE LO HACEN MERAMENTE ANULABLE. EN ESTE CASO NADIE HA IMPUGNADO EL TESTA-MENTO, LOS HEREDEROS LO HAN RESPETADO Y HAN DISTRIBUIDO PARTE DE LA HERENCIA DE CONFORMIDAD CON LA VOLUNTAD DE SU CAUSANTE ALLÍ CONSIGNADA. POR TANTO, LA VALIDEZ DEL TESTA- *83 MENTO DEBE SOSTENERSE Y AUTORIZAR LA INSCRIP-CIÓN DEL DERECHO HEREDITARIO. Recurso gubernativo, págs. 2-3.
La Registradora presentó su escrito en oposición al recurso gubernativo instado por la Sucesión Caragol. En el referido escrito, la Registradora reiteró las faltas notificadas y argüyó que éstas producían la nulidad del testamento otorgado por el señor Caragol Rabel.
Posteriormente, la Asociación de Notarios de Puerto Rico (Asociación de Notarios) presentó una moción para intervenir como amicus curiae, petición que concedimos. En su memorando, la Asociación de Notarios arguye que ni el Código Civil ni la Ley Notarial le imponen al notario la obligación de conocer a los testigos instrumentales, y mucho menos de identificarlos por los medios supletorios. Argumenta como fundamento de su posición que de acuerdo con la doctrina, los testigos instrumentales no son otorgantes ni comparecientes, ya que éstos no intervienen en el otorgamiento de la escritura.
Con el beneficio de la comparecencia de las partes y de la Asociación de Notarios, pasemos a resolver la controversia ante nos.
II
En nuestro ordenamiento jurídico, de entronque civilista, las personas naturales tienen a su disposición el testamento como “mecanismo regulador del destino jurídico de los bienes y las obligaciones para después de su muerte...”.([9]) El testamento es un acto solemne (o formal), por el que unilateralmente una persona sola (unipersonal) establece ella misma (carácter personalísimo), para después de su muerte, las disposiciones (patrimoniales o no) que le *84 competan, pudiendo siempre revocarlas.([10]) De esta definición se deduce que el testamento es un negocio jurídico solemne, unilateral, personalísimo([11]) y revocable. Nuestro Código Civil permite a los individuos plasmar su última voluntad a través varios tipos de testamento, a saber: el testamento abierto, el testamento cerrado o el testamento ológrafo.
En el testamento abierto, el testador declara su voluntad postuma en presencia del notario y de los testigos idóneos, quedando éstos enterados de lo que en él se dispone.([12]) La publicidad de la última voluntad del testador ante el notario y los testigos es la característica distintiva del testamento abierto. Como se sabe, el Código Civil le impone al notario autorizante de un testamento abierto la obligación de cumplir con todas las solemnidades requeridas en dicho cuerpo legal. Ello con el propósito de asegurar la autenticidad del testamento abierto y así proteger la última voluntad del testador. Además, es una norma de derecho claramente establecida que en el testamento abierto, como en cualquier escritura, la Ley Notarial y su Reglamento rigen supletoriamente, complementando y asegurando el cumplimiento de las disposiciones del Código Civil([13]) Cónsono con lo anterior, en In re Irlanda Pérez, 162 D.P.R. 358 (2004), resolvimos que al otorgar un testamento abierto, por ser éste un instrumento público, el notario debe cumplir no sólo con las solemnidades contenidas *85 en el Código Civil sino, además, con los requisitos de forma que le imponen la Ley Notarial y su Reglamento.
A esos efectos, el Art. 15 de la Ley Notarial([14]) detalla las formalidades y las advertencias que el notario autorizante de un instrumento público tiene que consignar en éste. En lo pertinente, el inciso (d) del referido artículo dis-pone que el notario consignará en la parte expositiva de la escritura “[e]l nombre y apellido o apellidos, según fuere el caso, la edad o mayoridad, [el] estado civil, [la] profesión y vecindad de los otorgantes, [el] nombre y [las] circunstancias de los testigos, de haber alguno, según sus dichos”. (Enfasis suplido.) 4 L.P.R.A. sec. 2033(d). Acto seguido, el inciso (e) de dicho artículo manifiesta, entre otras cosas, que el notario deberá dar fe del conocimiento de los otorgantes. 4 L.P.R.A. sec. 2033(e).
Es preciso advertir que el referido inciso no le requiere al notario dar fe expresa del conocimiento de los testigos instrumentales. No obstante, la Regla 29 del Reglamento Notarial señala que el notario “tiene el deber primario de asegurarse de su conocimiento personal de los comparecientes[, y d]e conocerlos tiene el deber de dar fe ... de dicho conocimiento en el instrumento”. (Enfasis suplido.)([15]) Indica, además, que de no conocer a los comparecientes, el notario así lo hará constar y utilizará los medios supletorios de identificación.
Respecto al conocimiento que el notario tiene que tener de los comparecientes, hemos resuelto que ello no necesariamente implica ni obliga a que, al momento del otorgamiento, el notario deba conocer a los comparecientes por una relación previa. Bastará el conocimiento que el notario deriva de su juicio crítico a través de su relación y *86 observación de los comparecientes en las etapas preliminares al otorgamiento.([16]) La médula de la fe del conocimiento es que el notario se asegure de que el compareciente es quien dice ser.
Nótese que la aludida disposición legal le impone al notario la obligación de conocer a los comparecientes y dar fe de ello en la escritura pública. Empero, la citada regla guarda silencio acerca del conocimiento que debe tener el notario sobre los testigos instrumentales. Cabe señalar que es en este estatuto que la Registradora apoya su denegatoria, toda vez que considera que los testigos instrumentales son comparecientes.
Por lo tanto, debemos determinar si el término “comparecientes” incluye a los testigos instrumentales o si, por el contrario, el término “comparecientes” se refiere a una categoría distinta a la de los testigos instrumentales. Veamos.
La redacción de los instrumentos públicos en nuestra jurisdicción, al igual que en España, se rige por un sistema científico-jurídico. Este sistema separa, en la redacción de los instrumentos, los elementos personales de los reales y de los formales, distinguiendo en el mismo diversas secciones o apartados.([17]) La denominación de los individuos que presencian el acto del otorgamiento y la autorización de un instrumento público se determina a base de la sección o el apartado del cual forman parte de acuerdo con el carácter y la naturaleza de su intervención.
Comencemos, pues, nuestro análisis definiendo brevemente los apartados del instrumento público. La comparecencia es la parte del instrumento público en donde el notario plasma el acto que constituye su objeto y *87 las personas entre quienes se celebra.([18]) Por otra parte, el otorgamiento es la parte del instrumento público que contiene la ratificación formal del consentimiento manifestado por los otorgantes, por los comparecientes o por ambos.
De acuerdo con el tratadista Giménez-Arnau, a través de la comparecencia los individuos ingresan en el territorio del instrumento público.([19]) Como la comparecencia contiene y estampa la presencia física y coetánea de los comparecientes ante el notario, ésta es un hecho jurídicamente significativo. Ello es así porque los comparecientes han rogado la intervención del notario para un acto oficial.([20]) Además de concretar la presencia física de los comparecientes, la comparecencia, según Núñez Lagos, es el Acta de la Sesión que enlaza a los presentes porque constituye el vínculo que une y sujeta a las personas que participan en el acto del otorgamiento.([21])
El tratadista Núñez Lagos comenta que la comparecencia no sólo se refiere a los comparecientes —plano del instrumento— sino a las partes, es decir a los otorgantes, quienes son parte del plano del negocio jurídico.([22]) Conforme a este razonamiento, podemos colegir que existe una diferencia entre el carácter de compareciente y el de otorgante. Por ello, al evaluar si una persona es un compareciente o un otorgante (o parte), es preciso considerar los factores siguientes: el alcance de su presencia, la función *88 de su intervención, su participación en el acto del otorgamiento, así como su relación respecto a los presentes.
Según los factores antes mencionados, Núñez Lagos define a los comparecientes del instrumento público como aquellas personas que prestan su conformidad a una narración exacta e íntegra de los hechos en que han intervenido y aprueban con su firma la fidelidad del relato.([23]) De esta definición podemos colegir que los comparecientes son aquellas personas que de forma voluntaria y de acuerdo con un derecho rogado se presentan físicamente ante el notario para poner en marcha la actividad notarial.([24]) En otras palabras, los comparecientes se personan ante el notario en aras de provocar la intervención notarial y la actuación de la fe pública notarial. ([25])
A diferencia del compareciente, el otorgante o parte es aquel que como consecuencia de un interés común y una función coincidente en el otorgamiento, presta un concreto consentimiento, especial y notarial, al negocio y al instrumento público.([26]) Es decir, el otorgante comparece físicamente ante el notario y compromete su patrimonio en el negocio jurídico en cuestión, toda vez que tiene un interés en el instrumento en el cual comparece.
De acuerdo con los postulados antes enunciados, salta a la vista la diferencia entre el carácter de compareciente y de otorgante en un instrumento público. El compareciente, debido al carácter instrumental que tiene, es aquel que, además de presenciar físicamente el hecho del otorgamiento, actúa en el mismo y con su actuación, a ve *89 ces, de hecho, vincula al otorgante o parte.([27]) Por otro lado, el otorgante o parte, debido al carácter de negociador que posee, es aquel que compromete su persona o patrimonio en el negocio jurídico en cuestión, esté o no físicamente presente ante el notario. El tratadista Giménez-Arnau sintetiza la diferencia entre comparecientes y otorgantes al expresar que los comparecientes pertenecen al mundo de los hechos y los otorgantes al mundo del derecho.([28])
A pesar de que en muchos casos el propio otorgante (o parte) es quien comparece físicamente a la autorización del acto notarial, esto no varía ni invalida la distinción que existe entre el otorgante (o parte) y el compareciente, sino que la autorización subsiste. ([29]) Es necesario señalar que el otorgante puede desempeñar al mismo tiempo el rol del compareciente, ya que dicha confluencia subjetiva entre ambos caracteres es circunstancial y no necesaria. Se trata de una mera coincidencia en los personajes del instrumento público y no de la identidad de los sujetos del mismo. No obstante, un compareciente no necesariamente es un otorgante, porque en su intervención notarial no siempre compromete su persona o patrimonio. Creemos que se es otorgante y compareciente cuando el sujeto que negocia es la misma persona que el sujeto instrumental. Tal es el caso de la persona que comparece en nombre propio para establecer, modificar o extinguir relaciones jurídicas que le atañen.
Según estos preceptos, es forzoso concluir que están excluidos del concepto "compareciente"y "otorgante", el propio notario autorizante y los testigos instrumentales.([30]) *90 Como los testigos instrumentales, por las particularidades de su intervención y su participación en el testamento abierto no están incluidos dentro de la clasificación de "compareciente", el tratadista Argentino I. Neri los denomina “concurrentes”, ya que asisten al acto del otorgamiento y lo suscriben sin establecer, por sí mismos, ninguna relación de derecho.{[31]) Dicho de otro modo, los testigos instrumentales no son sujetos del acto del otorgamiento, ya que no son parte del negocio jurídico y no ingresan ni participan en él.
De un sereno y reflexivo análisis podemos colegir que los testigos instrumentales no son comparecientes. En idénticos términos se expresa el tratadista Núñez-Lagos, quien designa a los testigos instrumentales como interventores, toda vez que su función —en el otorgamiento del instrumento público en cuestión— es puramente medial o instrumental. La intervención de los testigos instrumentales en el otorgamiento del testamento abierto es puramente medial o instrumental, puesto que asisten al acto para imprimirle validez pero no establecen ninguna relación jurídica. Respecto a la intervención de los testigos instrumentales, Núñez-Lagos expresa lo siguiente:
... A veces intervienen determinadas personas con carácter puramente medial o instrumental, sin alcanzar en ningún momento la cualidad de sujetos, ni del negocio jurídico (partes), ni del documento (comparecientes). Tales son los testigos instrumentales ....
... El testigo instrumental tiene por misión presenciar pasivamente un hecho: el otorgamiento de un documento público. ... Pero no llega a alcanzar la cualidad de parte contratante y permanecen extraños a la relación jurídica de fondo. (Énfasis suplido.([32])
La intervención de los testigos instrumentales en el testamento abierto es en calidad de espectadores de la última *91 voluntad del testador y su presencia física resulta indispensable para asegurar la validez y la autenticidad del testamento. Conviene recordar, además, que los testigos instrumentales son responsables de presenciar el acto del otorgamiento, entre otras cosas, con el propósito de servir de medio probatorio para testificar en su día, de ser necesario, ante el foro judicial competente sobre la ocurrencia de los hechos y los pormenores del otorgamiento del testamento. Además de servir como medio probatorio, la intervención de los testigos instrumentales en el testamento abierto abona a la fe pública y refuerza la autenticidad de los hechos, ya que éstos comparten con el notario el juicio sobre la capacidad del testador.
Cabe resaltar que en la doctrina existe un debate en cuanto a si la presencia de los testigos instrumentales es necesaria en el otorgamiento de los instrumentos públicos. Algunos tratadistas sostienen que los testigos instrumentales son innecesarios en algunos actos inter vivos. No obstante, éstos opinan que en los actos mortis causa la presencia de los testigos instrumentales es esencial para la validez del testamento porque mediante ellos se comprueba si el testador es, efectivamente, quien dice ser, y en el caso específico de los testamentos abiertos, éstos no sólo testimonian, sino que —como dijimos anteriormente— comparten el juicio sobre la identidad y capacidad del testador. ([33])
Bajo el crisol de este marco doctrinal, concluimos que para efectos del otorgamiento de los testamentos abiertos, los testigos instrumentales no son comparecientes y mucho menos otorgantes. Dicha conclusión es la que se impone según el rol que ejercen los testigos instrumentales en el otorgamiento del testamento abierto.
Los testigos instrumentales no poseen las características inherentes y particulares de los comparecientes. Por la función de los testigos instrumentales como coadyu *92 vantes o colaboradores necesarios de la fe pública notarial,([34]) la intervención de éstos es puramente medial o instrumental, sin alcanzar en ningún momento la cualidad de comparecientes. Su cometido es imprimirle validez al acto de otorgamiento del testamento abierto, presenciando pasivamente el otorgamiento de dicho testamento con el propósito de servir como medio de prueba, en caso de que sea necesario.([35]) Es por ello que estamos contestes con la posición de la Asociación de Notarios de que la norma generalizada en el notariado latino es que el concepto “compareciente” no incluye a los testigos instrumentales.
Como los testigos instrumentales no son comparecientes, resolvemos que el notario autorizante de un testamento abierto no tiene que conocer a los testigos instrumentales y, mucho menos, dar fe expresa sobre dicho conocimiento. No encontramos razón alguna para requerirle al notario que debe conocer personalmente a los testigos instrumentales, quienes figuran en el acto testamentario por su carácter medial. El hecho de que los testigos instrumentales compartan con el notario el juicio de la identidad y capacidad del testador, no es un fundamento para exigirle a éste que conozca a dichos testigos y, además, consigne en el testamento abierto la dación de fe del conocimiento. Los testigos instrumentales son extraños a la relación jurídica testamentaria que presencian y su intervención, en el otorgamiento del testamento abierto, no es en carácter de compareciente sino en calidad de interventores, para imprimirle validez al testamento.
Como consecuencia del carácter medial e instrumental que poseen los testigos instrumentales, consideramos que su identificación se reduce, según con las disposiciones del Art. 15(d) de la Ley Notarial de 1987, a la *93 constancia de su “nombre y circunstancias de los testigos, ... según sus dichos”. (Enfasis suplido.) Esto es, el notario tendrá que consignar en el testamento abierto el nombre, la edad, el estado civil, la profesión y la vecindad de los testigos instrumentales.
Es imperativo puntualizar que nuestro pronunciamiento no se extiende a los testigos de conocimiento. Cuando el notario utilice a los testigos de conocimiento para identificar al testador, es imperativo e imprescindible para la validez del testamento que el notario conozca a los testigos de conocimiento y dé fe expresa de dicho conocimiento en el testamento.([36]) Asimismo, cuando en conformidad con la Regla 31 del Reglamento Notarial([37]) los testigos instrumentales funjan como testigos de conocimiento en el otorgamiento del testamento abierto, el notario deberá conocerlos y dar fe expresa del conocimiento de éstos en el testamento.
Por lo tanto, resolvemos que los testigos instrumentales no son comparecientes y el notario no está obligado a conocerlos ni a dar fe de ello en el testamento. La conclusión a la que hemos llegado se fortalece aún más al analizar las disposiciones del Código Civil relativas a los testamentos abiertos. Veamos.
III
Para que el testamento abierto otorgado por el testador sea válido, nuestro Código Civil requiere, inter alia, que sea otorgado ante tres testigos idóneos que conozcan, vean y entiendan al testador. Ello es así porque el quehacer jurídico mortis causa ha sido investido de mayores formalidades que los negocios inter vivos.([38]) Los tres testigos instrumentales tienen que ser idóneos, esto es, no pueden po *94 seer ninguna de las incapacidades establecidas en el Código Civil,([39]) deben ver y entender al testador y, por los menos, uno de los tres testigos debe saber y poder leer y escribir.([40]) Ahora bien, de los tres testigos instrumentales que estarán presentes en el otorgamiento del testamento abierto, dos de ellos deberán conocer al testador y, si no le conocieren, se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario y de los testigos instrumentales. ([41])
Del citado artículo se deduce que cuando el notario no pueda identificar directamente al testador, esto es, que cuando dos de los tres testigos instrumentales no conozcan al testador, el notario suplirá la falta de conocimiento de éstos través de dos testigos de conocimiento. Es de vital importancia para la validez del testamento abierto que el notario que lo autoriza conozca a los dos testigos de conocimiento, toda vez que “la misión de éstos es servir de puentes de conocimiento entre el testador, el notario y los testigos [instrumentales]”.([42]) Además de conocer a los testigos de conocimiento, el Art. 649 del Código Civil([43]) le requiere al notario que consigne, al final del testamento, una dación de fe a los efectos de que conoce al testador y a los testigos de conocimiento, en su caso. Al examinar este precepto, resolvimos que la dación de fe del conocimiento del testador y de *95 los testigos de conocimiento es una solemnidad de fondo cuya omisión produce la nulidad del testamento([44])
Al analizar integralmente los referidos estatutos así como las disposiciones del Código Civil aplicables a los testamentos abiertos, surge con meridiana claridad que el notario tiene que conocer a los testigos de conocimiento, mas no a los testigos instrumentales. Los Arts. 634 y 649 del Código Civil, 31 L.P.R.A. sees. 2150 y 2186, no imponen al notario la obligación de conocer a los testigos instrumentales ni le exigen plasmar en el testamento abierto la dación de fe del conocimiento sobre dichos testigos. Es preciso señalar que el Art. 649 del Código Civil, supra, hace alusión únicamente al conocimiento que tiene que tener el notario del testador y de los testigos de conocimiento.
Por lo tanto, concluimos que al amparo del Código Civil la fe del conocimiento del notario se extiende solamente al testador y a los testigos de conocimiento. En consecuencia, el notario autorizante de un testamento abierto no tiene que conocer a los testigos instrumentales ni tiene que dar fe de dicho conocimiento en el testamento.
Aun cuando reconocemos que la presencia de los testigos instrumentales es indispensable y esencial para la validez del testamento abierto, ello no significa que el notario tenga que conocerlos y dar fe en el testamento sobre dicho conocimiento.
Es imperativo señalar que no podemos supeditar la última voluntad de los testadores —en este caso, del señor Caragol Rabel— a requisitos de forma que el Código Civil no requiere. Resolver lo contrario equivaldría a insertar por fíat judicial una formalidad testamentaria en nuestro Código Civil, afectando así la integridad testamentaria y la voluntad postuma del testador.
No obstante, la Registradora sostiene en su denegatoria que la jurisprudencia más reciente de este Tribunal ha re *96 suelto que el notario tiene que conocer a los testigos instrumentales. Discrepamos. En Deliz et als. v. Igartúa et als., 158 D.P.R. 403 (2003), resolvimos que el notario tiene que dar fe expresa en el testamento del conocimiento del testador. Adviértase que en dicho caso no extendimos la fe del conocimiento del notario a los testigos instrumentales.
De acuerdo con lo anteriormente expuesto, resolvemos que la Registradora erró al determinar que el Código Civil y la Ley Notarial de 1987 exigen al notario autorizante de un testamento abierto conocer a los testigos instrumentales. No podemos avalar la determinación de la Registradora, porque ello implicaría reducir la fe de conocimiento a una regla fija e invariable, produciendo así resultados contrarios a nuestro ordenamiento jurídico.
Asimismo, consideramos errado el argumento de la Registradora de que el testamento del señor Caragol Rabel es nulo porque el notario no expresó en el testamento abierto que conocía a los testigos instrumentales.
El Art. 636 de nuestro Código Civil([45]) dispone que “[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas”. Conforme a dicho estatuto, hemos resuelto reiteradamente que las solemnidades cuya inobservancia conlleva la nulidad del testamento no deben ser “más ni menos que las precisas para hacer auténtica, segura y permanente la última voluntad del testador”.([46]) Ya que el conocimiento que tiene el notario de los testigos instrumentales no es una solemnidad de fondo requerida por el Código Civil, su omisión y la falta de dación no vicia de nulidad el testamento del señor Caragol Rabel. Puntualizamos, además, que la nulidad de un testamento abierto sólo puede ser determinada por los tribunales y no por los Registradores de la Propiedad.
*97 Por último, nos resta aún determinar si la omisión del notario de dar fe de que por lo menos dos de los testigos instrumentales conocen, ven y entienden al testador, constituye una falta que impida la inscripción del derecho hereditario en el Registro de la Propiedad.
Hace casi nueve décadas resolvimos en Bardeguez v. El Registrador, 27 D.P.R. 214, 215-216 (1919), que la omisión del notario de hacer constar en el testamento que los testigos instrumentales conocen, ven y entienden al testador no es una solemnidad de fondo, por lo que puede entenderse suplida por la constancia del notario, en términos generales, de dar fe de haber cumplido con todas las formalidades legales.
Al examinar el testamento abierto del señor Caragol Rabel notamos que, en efecto, el notario no consignó que los testigos instrumentales conocían, veían y entendían al testador. No obstante, el notario plasmó al final del testamento la dación de fe general a los efectos de que había cumplido con todas las formalidades legales.
En conformidad con lo anterior, es forzoso concluir que la omisión en el testamento del señor Caragol Rabel de que los testigos instrumentales lo conocían, veían y entendían fue subsanada por la dación de fe general. Por ende, ello no impide la inscripción del testamento en el Registro de la Propiedad.
IV
Por los fundamentos antes expuestos, resolvemos que los notarios no tienen que conocer a los testigos instrumentales, ya que éstos no son comparecientes. Por lo tanto, la omisión de dar fe de ello en el testamento abierto no impide la inscripción en el Registro de la Propiedad de un derecho hereditario fundado en aquél. Por lo tanto, se le ordena a la Registradora, honorable Sandra Valentín Díaz, que pro *98 ceda a inscribir en el Registro de la Propiedad el referido testamento. Se dictará sentencia de conformidad.
La Jueza Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad y disidente. El Juez Asociado Señor RebolloLópez no intervino.

(1) Dicho testamento abierto se otorgó en San Juan mediante la Escritura Pública Núm. Tres de 17 de abril de 1990. Apéndice del Recurso gubernativo, págs. 21-25.

(2) Instancia Enmendada, Apéndice del Recurso gubernativo, págs. 12-13.

(3) Notificación de 5 de mayo de 2005, Apéndice del Recurso gubernativo, págs. 10-11.

(4) A pesar de que la Registradora, tanto en su notificación de falta como en su decisión final en la cual denegó la inscripción del derecho hereditario, hace alusión al Art. 17 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, entendemos que quiso referirse al Art. 17 de la Ley Notarial de Puerto Rico, que es la disposición que trata de la materia en cuestión. Ello es así ya que la Regla 17 del Reglamento Notarial de lo que trata es del Depósito Judicial.

(5) Apéndice del Recurso gubernativo, págs. 3-9.

(6) Denegatoria de Recalificación, Apéndice del Recurso gubernativo, págs. 1-2.

(7) 4 L.P.R.A. see. 2035.

(8) 31 L.P.R.A. sees. 2146-2152.

(9) E. González Tejera, Derecho de Sucesiones, San Juan, Ed. U.P.R., 2002, T. II, pág. 1.

(10) íd., pág. 9, citando a M. Albaladejo, Manual de derecho de familia y sucesiones, Barcelona, Ed. Bosch, 1974, pág. 231.

(11) A esos efectos, el Art. 619 del Código Civil, 31 L.P.R.A. see. 2124, dispone, en lo pertinente, que por el carácter personalísimo del testamento, no “podrá dejarse su formación en todo ni en parte al arbitrio de un tercero, ni hacerse por medio de un comisario o mandatario”.

(12) Véase Art. 628 del Código Civil, 31 L.P.R.A. see. 2144. Debemos señalar que son testamentos abiertos el testamento en caso de epidemia y el testamento en inminente peligro de muerte, ya que la última voluntad del testador es divulgada ante los testigos.

(13) Cintron v. Cintrón, 70 D.P.R. 771, 781 (1950).

(14) 4 L.P.R.A. see. 2033.

(15) 4 L.P.R.A. Ap. XXIV.

(16) In re Cando Sifre, 106 D.P.R. 386, 389 (1977).

(17) E. Giménez-Arnau, Derecho Notarial, 2da ed., Pamplona, Ed. Universidad de Navarra, 1976, pág. 516.

(18) Id., pág. 519. Debemos señalar, además, que a través de la comparecencia, el notario realiza una narración documental de los hechos y especifica el negocio jurídico en cuestión y, además, detalla las particularidades del mismo, a saber, el número, el lugar y la fecha del instrumento, así como la competencia jurisdiccional del notario.

(19) Giménez-Arnau, op. cit., págs. 519-520.

(20) íd.

(21) R. Núñez-Lagos, Estudios de Derecho Notarial, Madrid, Ed. Marcial Pons, 1986, T. II, pág. 36.

(22) R. Núñez-Lagos, Los esquemas conceptuales del instrumento público, Madrid, Gráficas Muyer Estrella, 1953, pág. 35. Véase, además, Giménez-Arnau, op. cit., págs. 521-522.

(23) Núñez Lagos, Los esquemas conceptuales del instrumento público, op. cit., pág. 49.

(24) Véase Núñez-Lagos, Estudios de Derecho Notarial, op. cit., pág. 27.

(25) Giménez-Arnau, op. cit., pág. 521.

(26) Véanse: Núñez-Lagos, Los esquemas conceptuales del instrumento público, op. cit., págs. 49-50; P. Ávila Álvarez, Estudios de Derecho Notarial, 5ta ed., Madrid, Ed. Montecorvo, 1982, pág. 127.

(27) Tal es el caso del compareciente que otorga una escritura en representación del otorgante. Por ejemplo, el tutor en representación del pupilo; el director de una agencia o corporación en representación de ésta.

(28) Giménez-Arnau, op. cit., pág. 521.

(29) Núñez-Lagos, Los esquemas conceptuales del instrumento público, op. cit., pág. 27.

(30) Giménez-Arnau, op. cit., pág. 522.

(31) Núñez-Lagos, Los esquemas conceptuales del instrumento público, op. cit., pág. 141.

(32) íd., pág. 74.

(33) Giménez-Arnau, op. cit., pág. 709.

(34) íd., pág. 704.

(35) Núñez-Lagos, Los esquemas conceptuales del instrumento público, op. cit., pág. 74.

(36) Véanse: Arts. 634 y 649 del Código Civil, 31 L.P.R.A. sees. 2150 y 2186.

(37) 4 L.P.R.A. Ap. XXIV.

(38) Véase E. González Tejera, Análisis del término 2002-2003: derecho de sucesiones, 73 (Núm. 4) Rev. Jur. U.P.R. 777 (2004).

(39) El Art. 630 del Código Civil, 31 L.P.R.A. see. 2146, dispone que no podrán ser testigos en los testamentos: (1) los menores de edad; (2) los que no tengan la calidad de vecinos o domiciliados en el lugar del otorgamiento; (3) los ciegos o totalmente sordos o mudos; (4) los que no entiendan el idioma del testador; (5) los que no estén en su sano juicio; (6) los que hayan sido condenados por delito de falsificación de documentos públicos o privados, o por el de falso testimonio, y (7) los dependientes, amanuenses, criados ni persona otra alguna que trabaje en la misma oficina, o sea socio o pariente dentro del cuarto grado de consanguinidad o segundo de afinidad del notario autorizante. Véanse, también: Arts. 631 y 632 del Código Civil, 31 L.P.R.A. sees. 2147 y 2148.

(40) Art. 644 del Código Civil, 31 L.P.R.A. see. 2181.

(41) Art. 634 del Código Civil, supra.

(42) González Tejera, Dei'echo de Sucesiones, op. cit., pág. 97.

(43) 31 L.P.R.A. see. 2186.

(44) Deliz et ais. v. Igartúa et ais., 158 D.P.R. 403 (2003).

(45) 31 L.P.R.A. see. 2152.

(46) Paz v. Fernández, 76 D.P.R. 742, 752 (1954); Cintrón v. Cintrón, supra, pág. 775.

(12) Véase Art. 628 del Código Civil, 31 L.P.R.A. see. 2144. Debemos señalar que son testamentos abiertos el testamento en caso de epidemia y el testamento en inminente peligro de muerte, ya que la última voluntad del testador es divulgada ante los testigos.